Betty B. BURGESS, Individually and as Administratrix of the Estate of S. Reed Burgess, Jr., deceased, Appellant,

v.

CHARLOTTESVILLE SAVINGS AND LOAN ASSOCIATION, Appellee.

No. 72-2272.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 6, 1973.

Decided April 9, 1973.

J. Robert Brame, III, Richmond, Va. (Robert H. Patterson, Jr., Richmond, Va., McGuire, Woods & Battle, Ellen V. Nash and Nash & Edelson, Charlottesville, Va., on brief), for appellant.

Stephen H. Helvin, Charlottesville, Va. (William A. Parks, Hot Springs, Va., B. B. Woodson, Charlottesville, Va., Garland M. Harwood and Shewmake & Gary, Richmond, Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and RUSSELL, and WIDENER, Circuit Judges.

RUSSELL, Circuit Judge:

The plaintiff and her deceased husband solicited a loan from the defendant Savings and Loan Association. In the loan application prepared by the defendant was the provision:

"Credit life, accident, health or loss of income insurance is not required to obtain this loan. No charge is made for such insurance and no such insurance is provided unless the borrower signs the appropriate statement below. Credit Life & Disability Income Ins. is available at a cost of $5,585.00 for the 25 year term of the initial policy. $11.95 Per Month."

This provision was incorporated in the loan application, as a result of Regulations issued by the Federal Reserve System [1] under authority of the Truth in Lending Act, 15 U.S.C., Section 1601.[2] Though the plaintiff and her husband signed the form, immediately following the paragraph quoted above, thereby indicating their desire to procure credit life insurance to protect their loan, no steps were thereafter taken by the defendant to procure such insurance. A few weeks after the loan was completed, the husband died and the plaintiff individually and as administratix of her husband's estate demanded of the defendant payment under the credit life insurance she and her husband had indicated in their loan application they desired. When that demand was refused, suit followed in the state court.

Plaintiff's action, as stated in her original complaint, was basically one to recover for breach of a contract to procure life insurance. In setting forth such cause of action in her complaint, the plaintiff included among her allegations the form of notice required by Federal Reserve Regulation Z under the Truth in Lending Act, which has already been quoted, and based one count in her action on the claim that the failure of the defendant to "procure the creditor life insurance as stated in its disclosure * * * violated Regulation Z and the Truth-in-Lending Act". Because of this claim made under the Truth in Lending Act, the defendant removed the action to the federal court as one "arising under the * * * laws * * * of the United States".[3] After

---

1. 12 C.F.R., Section 226.1.

2. On the Truth in Lending Act generally, see Note, 51 N.C.L.Rev. 592 (1973). The Act and the Regulations issued thereunder are, also, discussed in Mourning

v. Family Publications Service, Inc. (5th Cir. 1971) 449 F.2d 235, 238–249, cert. granted 405 U.S. 1062, 92 S.Ct. 1492, 31 L.Ed.2d 792.

3. 28 U.S.C. § 1441(b).

removal, the plaintiff moved to amend her complaint to incorporate a cause of action in tort for negligent failure to procure insurance.[4] The motion was denied on the ground that the Virginia Courts, deemed controlling as the law of the place of the contract, did not recognize as a tortious wrong such a right of action, citing Hayes v. Durham Life Insurance Company (1957) 198 Va. 670, 96 S.E.2d 109 and Justice v. Prudential Insurance Company of America (4th Cir. 1965) 351 F.2d 462, decided by this Court on the basis of Virginia law.[5] The Court, after finding federal jurisdiction on the ground that the case "involve[d] construction and interpretation of federal law, to-wit, the federal Truth-In-Lending Act", dismissed the action, D.C., 349 F.Supp. 133, holding there was no evidence that a contract to procure insurance was ever formed. From that decree, the plaintiff has appealed.

At the threshold, we are confronted with the question of federal jurisdiction. It is not enough that neither party has questioned federal jurisdiction. Because they are courts of limited jurisdiction, "[I]t has often been held that federal courts must be alert to avoid overstepping their limited grants of jurisdiction. At any stage of a litigation, including the appellate, subject-matter jurisdiction may be questioned. By failing to do so, the parties cannot confer jurisdiction by consent. If the court perceives the defect, it is obligated to raise the issue sua sponte." McCorkle v. First Pennsylvania Banking and Trust Co. (4th Cir. 1972) 459 F.2d 243, 244, note 1.

As stated in the order of the District Court, federal subject-matter jurisdiction in this case is predicated entirely on the claim that the suit "arises under" federal law. Such a claim of federal question jurisdiction is to be resolved on the basis of the allegations of the complaint itself. To sustain it, the complaint must, however, contain allegations "affirmatively and distinctly" establishing federal grounds[6] "not in mere form, but in substance" and "not in mere assertion, but in essence and effect."[7] Mere conclusory allegations in the complaint are insufficient to support jurisdiction.[8] As on eCourt has well expressed it, "[I]f the concept of 'federal question' is to have any meaning, the court must look beyond the verbiage of a complaint to the substance of the plaintiff's grievance, and dismiss the action, where no real basis for federal jurisdiction exists."[9] Thus, "[T]he mere assertion in a pleading that the case is one involving the construction or application of the federal laws does not authorize the District Court to entertain the suit"[10] nor does federal jurisdiction attach on the bare assertion that a federal right or law has been infringed or violated[11] or that the suit "takes its ori-

4. See Annotation, 29 A.L.R.2d 171; Butler v. Scott (10th Cir. 1969) 417 F.2d 471, 473.

5. Cf., however, Travelers Insurance Company v. Turner (1971) 211 Va. 552, 178 S.E.2d 503.

6. Barnhart v. Western Maryland Ry. Co. (4th Cir. 1942) 128 F.2d 709, 714, cert. denied 317 U.S. 671, 63 S.Ct. 75, 87 L.Ed. 538.

7. Cuyahoga Co. v. Northern Ohio Co. (1920) 252 U.S. 388, 397, 40 S.Ct. 404, 64 L.Ed. 626; Stanturf v. Sipes (8th Cir. 1964) 335 F.2d 224, 229.

8. Martinez v. Southern Ute Tribe (10th Cir. 1960) 273 F.2d 731, 734; Mantin v. Broadcast Music (9th Cir. 1957) 244 F.2d 204, 206.

9. Trauss v. City of Philadelphia (D.C. Pa.1958) 159 F.Supp. 672, 676.

10. Malone v. Gardner (4th Cir. 1932) 62 F.2d 15, 18; McCartney v. State of West Virginia (4th Cir. 1946) 156 F.2d 739, 741; Kilgore v. McKethan (5th Cir. 1953) 205 F.2d 425, 426, cert. denied 346 U.S. 924, 74 S.Ct. 311, 98 L.Ed. 417; Polhemus v. American Medical Ass'n. (10th Cir. 1944) 145 F.2d 357, 359.

11. Russo v. Kirby (2d Cir. 1971) 453 F.2d 548, 551; Swank v. Patterson (9th Cir. 1944) 139 F.2d 145, 146.

gin in the laws of the United States." [12] To satisfy the statutory jurisdictional requirement, a federal right must be a "real and substantial" [13] issue in the case and "must be an element of the *plaintiff's* cause of action" [14] (Italics in opinion). It is often true that, "[A] mere incidental or collateral federal question may appear, or may lurk in the background of the record, but this is not a sufficient or adequate basis upon which federal jurisdiction may attach." [15] Simply stated, an action arises under federal law only if it "really and substantially involves a dispute or controversy respecting the validity, construction or effect of such a law, upon the determination of which the result depends." [16] In ascertaining whether there is a real federal issue upon "which the result depends", the Courts have observed "the distinction between controversies that are basic and those that are collateral, between disputes that are necessary and those that are merely possible" [17] and federal question jurisdiction attaches only "to cases where the plaintiff's cause of action, *the rule of substance under which he claims the right to have a remedy,* is the product of federal law." (Italics added.) [18]

It is plain that, giving effect to the principles just stated, federal subject-matter jurisdiction is absent in this case. The real basis on which plaintiff plants her cause of action is an alleged contract or agreement to procure insurance, the breach of which, under her theory, gave rise to an action both in contract and in tort under the law of Virginia. It is true the alleged agreement had its "origin" in a notice form intended by the defendant as compliance with the Act [19] and the Regulations issued by the Federal Reserve System. That, however, was purely coincidental. Whether the form was one designed to comply with the Truth in Lending Act or not was unimportant; the basic issue in the case was whether the language used by the defendant in its form of loan application was sufficient to be the basis for the creation of a contractual right and that issue, all parties agree, is determinable solely by Virginia law, not federal law. In no sense can it be said that the plaintiff's cause of action is grounded on the Truth in Lending Act or will be dependent on a construction of that Act. Nor can it be converted into an action involving the construction of that Act merely by a conclusory allegation to that effect. The Truth in Lending Act is a "disclosure" law.[20] And, since the purpose of the Act is to permit the borrower, with full knowledge of costs, to make comparisons the disclo-

12. Shulthis v. McDougal (1912) 225 U.S. 561, 569, 32 S.Ct. 704, 706, 56 L.Ed. 1205; Barnhart v. Western Maryland Ry. Co., *supra,* at 713–714 (128 F.2d).

13. McCartney v. State of West Virginia, *supra,* at 741 (156 F.2d).

14. McCorkle v. First Pennsylvania Banking and Trust Co., *supra,* at 250 (459 F.2d); McCartney v. State of West Virginia, *supra,* at 741 (156 F.2d); Gully v. First Nat. Bank (1936) 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70.

15. Screven County v. Brier Creek Hunting & Fishing Club (5th Cir. 1953) 202 F.2d 369, 370, cert. denied 345 U.S. 994, 73 S.Ct. 1136, 97 L.Ed. 1402; Warrington Sewer Company v. Tracy (3d Cir. 1972) 463 F.2d 771, 772.

16. Shulthis v. McDougal, *supra,* at 569 (225 U.S.), 32 S.Ct. 706; Barnhart v. Western Maryland Ry. Co., *supra,* at 713–714 (128 F.2d); Malone v. Gardner, *supra,* at 18 (62 F.2d).

17. Gully v. First National Bank, *supra,* at 118 (299 U.S.), 57 S.Ct. 100.

18. Wechsler, Federal Jurisdiction and the Revision of the Judicial Code, 13 Law & Contemp.Prob. 216, 225 (1948).

19. Section 1605(b), 15 U.S.C.

20. Its purpose is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." Section 1601, 15 U.S.C.

sure must precede final closing of loan.[21] It is the obligation to disclose, *not the duty of subsequent performance*, towards which the Act is directed. For failure to make disclosure as required, the Act provides its own remedy. Section 1640, 15 U.S.C.[22] Obviously, the defendant complied fully with the Act: It made a full and exact disclosure. The plaintiff does not complain to the contrary. She accordingly has no basis for an action under the Truth in Lending Act for failure to disclose the cost of credit life insurance. She has not, by her own statement of her cause of action, any right to the statutory remedy authorized for a violation of the Truth in Lending Act. Though not essential to the determination of this case, a proper construction of the Act indicates that any private action for violation thereof is limited to the statutory remedy and can provide no basis for other relief. *Cf.,* Jordan v. Montgomery Ward & Co. (8th Cir. 1971) 442 F.2d 78, 81–82, cert. denied 404 U.S. 870, 92 S.Ct. 78, 30 L.Ed.2d 114; Wheeler v. Adams Company (D.C.Md.1971) 322 F.Supp. 645, 659. Accordingly, any claim for relief under the Truth in Lending Act in the present action would be purely fictitious. To repeat: Her action is for failure to perform on what she claims was an offer by the defendant to procure and an acceptance of that offer by her and her deceased husband. Such action involves a construction of the language in the form used by the defendant to give the disclosure required under the Truth in Lending Act, it is true, but not for the purpose of determining whether that language represents sufficient compliance with the Act (and thus a construction of federal law) but for the purpose of determining whether such language will under the law of Virginia constitute a valid contract to procure.

Such an action presents no federal question upon which the result of the action will depend. The District Court should remand the cause to the State Court.

Remanded with instructions to the District Court to remand the cause to the State Court from which it was removed.

---

21. Bissette v. Colonial Mortgage Corporation (D.D.C.1972) 340 F.Supp. 1191, 1192–1193; see, Ratner v. Chemical Bank New York Trust Company (D.C. N.Y.1971) 329 F.Supp. 270, 273 and 276; Bostwick v. Cohen (D.C.Ohio 1970) 319 F.Supp. 875, 877; Buford v. American Finance Company (D.C.Ga.1971) 333 F. Supp. 1243, 1245.

22. See Bostwick v. Cohen, *supra*, at 878 (319 F.Supp.).