Donald J. GHENT

v.

James T. LYNN, Secretary of the Department of Housing & Urban Development of the United States.

Civ. No. N–74–137.

United States District Court,
D. Connecticut.

April 24, 1975.

Gary I. Cohen, Seymour, Conn., for plaintiff.

Peter Mear, Asst. U. S. Atty., New Haven, Conn., for defendant.

## RULING ON DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

NEWMAN, District Judge.

This case presents the question of the jurisdiction of a United States district court to entertain breach of contract claims against the Secretary of Housing and Urban Development (H.U.D.) when the relief requested is damages in excess of $10,000. On August 3, 1971, the Hartford (Connecticut) Area Director of H.U.D. issued a conditional commitment for mortgage insurance on a construction project known as the Woodhaven Apartments, see 12 U.S.C. § 1701s and § 1715z–1 et seq. Plaintiff claims that an extension of the conditional commitment was illegally rescinded prior to

its date of expiration, and that such rescission entitles him to recover $300,000 in damages, including both expenses incurred in reliance on the commitment and loss of anticipated profits. The defendant, Secretary of H.U.D., moves to dismiss the suit for lack of jurisdiction, and, in the alternative, for summary judgment.

## I.

Plaintiff relies for jurisdiction primarily on 12 U.S.C. § 1702, which states that in carrying out the provisions of certain statutes, including those under which the conditional commitment was issued to plaintiff, the Secretary of H.U.D. is "authorized in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal."

On its face, § 1702 does no more than waive the sovereign immunity that would otherwise preclude suit against the Secretary in his official capacity. Though it permits suit by or against the Secretary in "any court of competent jurisdiction," the statute does not specify in which courts such suits may be brought. If there is subject matter jurisdiction, some other statute must provide it. Harms v. Federal Housing Administration, 256 F.Supp. 757 (D.Md. 1966); Choy v. Farragut Gardens, 131 F.Supp. 609 (S.D.N.Y.1955); cf. Bank of United States v. Deveaux, 9 U.S. (5 Cranch) 61, 85, 3 L.Ed. 38 (1809).

Some courts have construed § 1702 to provide subject matter jurisdiction, and have supported that interpretation by what they consider to be the anomalous result of reading the statute only as a waiver of sovereign immunity. I agree that there is district court jurisdiction for suits such as this one, but for reasons quite apart from this broad "interpretation" of § 1702.

A suit for damages against the Secretary in his official capacity is a suit against the United States, Edelman v. Federal Housing Administration, 382 F.2d 594 (2d Cir. 1967), and for nontort claims against the federal government, the Tucker Act, 28 U.S.C. §§ 1346 and 1491, both provides subject matter jurisdiction and waives the government's sovereign immunity from suit. The Tucker Act permits such suit in the Court of Claims without regard to the amount in controversy (§ 1491), but permit such suits in the district courts only when the amount sought is $10,000 or less (§ 1346).

By waiving the Secretary's sovereign immunity, § 1702 opens the door to suits against him in his official capacity brought in state courts of general jurisdiction. Such courts are "competent" within the meaning of § 1702 only because state jurisdictional statutes make them so. While § 1702 also waives the Secretary's sovereign immunity in federal courts, and does so (unlike the Tucker Act's district court provision) with no limit on the amount in controversy, it is no more a source of federal court jurisdiction than of state court jurisdiction. A claimant who sued the Secretary in federal district court and relied on the Tucker Act for the jurisdiction § 1702 does not provide, would encounter the Tucker Act's $10,000 limit on district court jurisdiction. If no other federal statute provided jurisdiction, such a claimant could sue the Secretary for more than $10,000 only in a state court or in the Court of Claims.

In Ferguson v. Union National Bank, 126 F.2d 753, 756 (4th Cir. 1942), the court reasoned that,

It could hardly have been intended by Congress that suits for over $10,000 against the Administrator [predecessor to the Secretary] could be brought in any state court of general jurisdiction, but in the federal jurisdiction, only in the Court of Claims . . . .

To avoid that result the Court construed § 1702 to be a grant of jurisdiction to the district courts. James T. Barnes & Co. v. Romney, 334 F.Supp. 657 (E.D.

Mich.1971), expressly relied on this supposed anomaly, and George H. Evans & Co. v. United States, 169 F.2d 500 (3d Cir. 1948), expressly relied on *Ferguson*.

Had § 1702 created the jurisdictional anomaly *Ferguson* suggested, that anomaly would be of Congress' making. Considerations of convenience to the claimants and preference for the federal forum might justify access to the federal district courts to supplement jurisdiction in the Court of Claims and in state courts. On the other hand, it would not have been unreasonable for Congress to require that the large claims of plaintiffs who choose to sue in the federal courts be brought in a single, specialized forum. Thus policy considerations do not compel a reading of § 1702 as a jurisdictional grant, and claimants seeking a recovery in the district court against the Secretary beyond the Tucker Act's monetary limit must look elsewhere for a source of district court jurisdiction.

*Ferguson* assumed that if § 1702 did not provide district court jurisdiction for claims against the government in excess of $10,000, no other statute would. No consideration, however, was given to the grant of general federal question jurisdiction, 28 U.S.C. § 1331, which gives district courts jurisdiction to hear any suit that "arises under the Constitution, laws, or treaties of the United States," where the amount in controversy exceeds $10,000. Understandably, few, if any, courts have considered the applicability of this statute to suits against the United States. Most claimants against the government rely on the Tucker Act for the waiver of sovereign immunity that would otherwise preclude their suits. When such a claimant attempts to sue in a district court for a sum that exceeds § 1331's $10,000 jurisdictional minimum, he encounters the Tucker Act's $10,000 maximum, and his claim therefore fails as an unconsented suit against the sovereign. Hence it is commonly said that suits against the government for more than $10,000 are in the exclusive jurisdiction of the Court of Claims, Philips v. United States, 206 F. 2d 867 (9th Cir. 1953); State Road Department of Florida v. United States, 166 F.2d 843 (5th Cir. 1948). In fact, the jurisdiction of the Court of Claims for suits claiming more than $10,000 is not exclusive; rather, there is rarely any statute available that waives sovereign immunity for suits in the district court, other than the Tucker Act with its $10,000 limit.

■ There are specific instances in which Congress has waived sovereign immunity for district court suits without regard to the amount in controversy, but in those same situations Congress has also given a complementary grant of jurisdiction to the district courts that makes resort to § 1331 unnecessary, see *e. g.*, 12 U.S.C. § 1819; 12 U.S.C. § 1452; and see 28 U.S.C. § 1345. *Ferguson*, and those decisions that followed it, construed § 1702 as both a waiver of sovereign immunity and a grant of jurisdiction, and therefore never considered § 1331 either, but *cf.* Harms v. Federal Housing Administration, *supra*. However, because § 1702, in my view, does not itself confer jurisdiction on federal district courts, and because no other statute grants jurisdiction coextensive with the waiver of the Secretary's sovereign immunity that § 1702 makes, this case raises the novel question of the application of § 1331 to suits against the United States.

The government contends that, despite its broad terms, § 1331's grant of general federal question jurisdiction does not extend to suits against the United States, even where sovereign immunity has been waived. But Congress effectively controls where and to what extent the United States may be sued by waiving and declining to waive sovereign immunity. And while authorization for such suits usually comes from the Tucker Act, Congress has frequently waived the sovereign immunity of specific government officials without regard to the

Tucker Act's monetary limit, as it has done here. No basis exists for reading into the Tucker Act a further intention to limit suits against the government by withdrawing the jurisdiction that other statutes otherwise provide. There is no indication in the language of the Tucker Act that it was intended to be the exclusive source of district court jurisdiction for such suits, or that it was in any way intended to limit the scope of § 1331, *cf.* 28 U.S.C. § 2679.

The question remains whether plaintiff's suit actually raises a federal question within the meaning of § 1331. The government notes that plaintiff has failed to refer to a single federal statute (other than § 1702) in his complaint. It argues that, in any case, whatever statute on which federal question jurisdiction is to be based must bear a substantial relation to the controversy. While that may be the case as to suits in which the government is not a party, *Gully v. First National Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936), where the suit is against the United States, the situation is quite different.

In *Clearfield Trust Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L. Ed. 838 (1943), the Supreme Court held that the liability of the federal government on the commercial paper that it issues is governed by federal rather than state law. The government's authority to issue the check that formed the subject matter of the lawsuit stemmed from the federal Constitution and federal law, and in no way depended on state law. Accordingly, the Court reasoned, the government's rights and duties emanated from the same federal sources. Although Congress could itself establish rules to govern controversies such as that before the Court, where Congress has not done so, "it is for the federal courts to fashion the governing rule of law according to their own standards." 318 U.S. at 367, 63 S.Ct. at 575. Admittedly the Supreme Court's charge to apply this federal "common law" does not extend to suits in which the government is not a party, *Bank of America National Trust & Savings Association v. Parnell,* 352 U.S. 29, 77 S.Ct. 119, 1 L.Ed.2d 93 (1956). However, when the government is a party, federal law governs not only disputes over commercial paper, but contract claims as well. *Priebe & Sons v. United States,* 332 U.S. 407, 68 S.Ct. 123, 92 L.Ed. 32 (1947); see Hart & Wechsler, The Federal Courts and the Federal System, 2d ed. 770, et seq.

■■ Hence, any claim against the government, even though it does not require the construing of a federal statute or regulation, is still one arising under federal common law. As such it is one arising under the laws of the United States within the meaning of § 1331, *Illinois v. City of Milwaukee,* 406 U.S. 91, 99, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972). Although there is no statute that specifically grants district court jurisdiction of suits against the Secretary coextensive with the waiver of his sovereign immunity made in § 1702, any such statute would be superfluous. For claims against the Secretary up to $10,000, the Tucker Act provides the necessary jurisdiction. For claims against the Secretary for more than that amount, § 1331 will suffice. Defendant's motion to dismiss for lack of subject matter jurisdiction is therefore denied.

For reasons set forth in a memorandum furnished to counsel, the government's motion for summary judgment is also denied.