AMES–ENNIS, INC., a Body Corporate

v.

**MIDLOTHIAN LIMITED PARTNER-SHIP, a Virginia Limited Partnership and Arnold L. Karp and Irwin Nestler and Patricia Harris, Secretary of Housing and Urban Development.**

Civ. No. B–76–1358.

United States District Court,
D. Maryland.

April 23, 1979.

---

Leo Howard Lubow and Freishtat & Schwartz, Baltimore, Md., for plaintiff.

William H. Holden, Jr. and Weinberg & Green, Baltimore, Md., for defendants Midlothian Limited Partnership, Arnold L. Karp, and Irwin Nestler.

Russell T. Baker, Jr., U. S. Atty., for Maryland, and Donald H. Feige, Asst. U. S. Atty., Baltimore, Md., for defendant Patricia Harris, Secretary of Housing and Urban Development.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

This is an action by a building contractor to recover damages from the Secretary of Housing and Urban Development (HUD) and from the owner-developer of a "Section 236"[1] housing project constructed by the plaintiff. The facts pleaded are essentially as follows: The owner, Midlothian Limited Partnership (Midlothian), undertook to develop a lower-income housing project in Richmond, Virginia. The project was FHA-insured and financed by Maryland National Bank (MNB), an FHA-approved mortgagee. Midlothian engaged the plaintiff, Ames-Ennis, Inc. (Ames-Ennis), to build the project. The various agreements among the parties are evidenced by, *inter alia*, the Regulatory Agreement between Midlothian and the Secretary (acting through the Federal Housing Commissioner) which governs most aspects of the management of the project; a Commitment for Insurance of Advances, entered into by MNB and the Commissioner; a Mortgagor's Certificate entered into by the Commissioner and Midlothian; and a Cost Plus Construction Contract (with amendments) between Ames-Ennis and Midlothian. A clause of the Mortgagor's Certificate specifies that ". . . upon completion of the Project there will not be outstanding any unpaid obligations contracted in connection with the purchase of the property, construction of the Project, or the mortgage transaction except such obligations as may be approved by [the Commissioner] as to terms, form and amount." Exhibit 5 to Amended Complaint. The plaintiff contends that it substantially completed construction of the project, but that Midlothian still owes Ames-Ennis the sum of $465,623 under the contract and that the Secretary refused to authorize release of and MNB wrongfully refused to release to Ames-Ennis a 10% retainage representing some $360,000. Midlothian filed a counterclaim alleging that Ames-Ennis failed to perform its obligations under the contract.

The amended complaint is in four counts. The first alleges that HUD and Midlothian, having agreed that upon completion of the project there would remain no outstanding obligations except those approved by HUD, acted tortiously "in symbiotic concert" to withhold the retainage allegedly due Ames-Ennis. The second count asserts that Ames-Ennis is the third-party beneficiary of various contracts between HUD and Midlothian assuring payment in full of the construction loan funds. The two remaining counts assert pendent claims: Count III alleges that Ames-Ennis is third-party ben-

1. 12 U.S.C. § 1715z–1. This section is designed to reduce rental payments for low income families by authorizing the government to make *periodic interest reduction payments on behalf* of the owners (mortgagors) of lower income housing projects to mortgagees holding FHA-insured project mortgages. The owners' reduced interest obligation is reflected in a diminished rental charge, geared to the residents' incomes. The Secretary may make these subsidy payments only so long as the mortgage is insured by or assigned to the Secretary. 12 U.S.C. § 1715z–1(b). The statute authorizes *the Secretary to make rules and regulations* and to enter into such agreements as are deemed necessary to carry out the purpose of the section. 12 U.S.C. § 1715z–1(h). The principal regulations are found at 24 C.F.R. § 236 *et seq.*

eficiary of various contracts between Midlothian and Maryland National Bank (MNB) which contemplate full payment of construction funds, and Count IV is a simple contract claim for monies due.

Both Midlothian and the Secretary have moved to dismiss for, *inter alia*, lack of subject matter jurisdiction. It is asserted that Count I must be dismissed for failure of the plaintiff to comply with the requirement of the Federal Tort Claims Act, 28 U.S.C. § 2671, § 2675(a), that a claim first be presented to the defendant agency and that Count II must be dismissed since it presents a contract claim in excess of $10,000 which falls under the exclusive jurisdiction of the Court of Claims. 28 U.S.C. § 1346(a)(2) and § 1491. It is agreed that if it be found that this court lacks jurisdiction over the federal defendant in Counts I and II, then the case in its entirety must be dismissed.[2] That is precisely the conclusion reached by the court.

While conceding that it never presented its Count I claim to HUD in compliance with the Federal Tort Claims Act and that Count II seeks to recover more than $10,000 on a contract, Ames-Ennis nevertheless asserts several alternative bases for federal jurisdiction. The court will treat these seriatim.

### 12 U.S.C. § 1702

The plaintiff asserts that this court has jurisdiction over Counts I and II under 12 U.S.C. § 1702, that section of the National Housing Act which permits the Secretary of HUD in her official capacity "to sue and be sued in any court of competent jurisdiction, State or Federal." The question is whether this is an affirmative grant of jurisdiction or merely a waiver of sovereign immunity.

The Fourth Circuit ruled in 1942 that the "sue and be sued" language of § 1702 was an affirmative grant of jurisdiction and that the jurisdiction of the District Courts to hear suits against federal agencies was not limited by the Tucker Act. *Ferguson v. Union National Bank of Clarksburg, W. Va.*, 126 F.2d 753, 756–57 (4th Cir. 1942). This decision was followed early by the Third Circuit, *George H. Evans & Co. v. United States*, 169 F.2d 500, 502 (3d Cir. 1948), and later by the Tenth Circuit, *Mar v. Kleppe*, 520 F.2d 867, 870–71 (10th Cir. 1975), and by at least one district court. *See, e. g., Travelers' Indemnity Co. v. First National Bank of New Jersey*, 328 F.Supp. 208, 211–12 (D.N.J.1971).

While ordinarily this court would consider itself conclusively bound by the holding of the Fourth Circuit, in this case, recent developments in the law as well as a number of well-reasoned opinions in other circuits compel the conclusion that § 1702 is not an independent basis of jurisdiction. The Third Circuit (in a more recent case), as well as the Eighth and Ninth Circuits have held that the "sue and be sued" language of § 1702 is not jurisdictional but is merely a waiver of sovereign immunity. *Lindy v. Lynn*, 501 F.2d 1367, 1369 (3d Cir. 1974); *Bor-Son Building Corporation v. Heller*, 572 F.2d 174, 181 (8th Cir. 1978); *DSI Corporation v. Secretary*, 594 F.2d 177 (9th Cir. 1979). Several district courts are in accord: *Harms v. FHA*, 256 F.Supp. 757, 760 (D.Md. 1966); *Ghent v. Lynn*, 392 F.Supp. 879, 880–81 (D.Conn.1975); *Trans-Bay Engineers & Builders, Inc. v. Lynn*, 396 F.Supp. 265, 268 (D.D.C.1975), *affirmed in part, vacated in part and remanded on other grounds*, 179 U.S.App.D.C. 184, 190, 551 F.2d 370, 376 (1976).

This court is in agreement with those cases which hold that 12 U.S.C. § 1702 is not an affirmative grant of jurisdiction. The statute by its very terms appears to look outside of itself for jurisdiction. This reading of § 1702 is confirmed by a footnote in a recent decision of the United States Supreme Court. Speaking of a statutory provision for judicial review rather than "sue or be sued" language, the Court noted that:

---

2. There is no diversity among the non-federal parties. Ames-Ennis is a Maryland corporation. While Midlothian is a Virginia limited partnership, both of the general partners named in this suit are Maryland residents.

[Section 10 of the APA, specifically 5 U.S.C. § 703] suggests that this language was not intended as an independent jurisdictional foundation, since such judicial review is to proceed "in a court specified by statute" or "in a court of competent jurisdiction." Both of these clauses seem to look to outside sources of jurisdictional authority.

*Califano v. Sanders*, 430 U.S. 99, 106 n.6, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977). This court finds that 12 U.S.C. § 1702 similarly looks to "outside sources of jurisdictional authority." [3]

The Fourth Circuit, in holding to the contrary, expressed concern that:

It could hardly have been intended by Congress that suits for over $10,000 against [the Secretary] could be brought in any state court of general jurisdiction, but in the federal jurisdiction only in the Court of Claims.

If this is an anomaly, it is an anomaly of Congress' own making. Accordingly, this court finds that 12 U.S.C. § 1702 is not a proper jurisdictional foundation for either Count I or Count II.

### 28 U.S.C. § 1331

■ The plaintiff next asserts that this court has jurisdiction over Count II under 28 U.S.C. § 1331 in that the case "arises under the Constitution, laws, or treaties of the United States." This case quite clearly does not require the interpretation of the Constitution, or the construction of any federal law or treaty. Nevertheless, the plaintiff properly points out that jurisdiction under § 1331 will support claims founded upon federal common law as well as those of a statutory origin. *Illinois v. City of Milwaukee*, 406 U.S. 91, 100, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972). Federal common law is that rather narrow body of decisional law which is applied in instances where state law cannot supply the rule of decision

and the federal courts are free to choose the appropriate rule. *See, e. g., Hinderlider v. LaPlata River & Cherry Creek Ditch Co.*, 304 U.S. 92, 110, 58 S.Ct. 803, 82 L.Ed. 1202 (1938); *D'Oench, Duhme & Co., Inc. v. FDIC*, 315 U.S. 447, 471–72, 62 S.Ct. 676, 86 L.Ed. 956 (concurring opinion by Justice Jackson) (1942). While the courts have found it necessary to apply federal common law in cases of disputes between states, *Hinderlider, supra*, in determining diversity among parties, *e. g., Ziady v. Curley*, 396 F.2d 873, 874 (4th Cir. 1968), and where there exists a strong federal policy favoring uniformity of result, *e. g., Clearfield Trust Co. v. United States*, 318 U.S. 363, 367, 63 S.Ct. 573, 87 L.Ed. 838 (1943), this case does not appear to be one of those which requires the application of federal common law.

■ At issue is a contract between two private, non-diverse parties. The legal question in the case appears to be whether the defendant Midlothian acted properly in withholding payments from or assessing liquidated damages against Ames-Ennis. The contract at issue was never assigned to the Secretary, and federal participation in the transactions was minimal. Simply stated, federal law is only tangentially implicated in this case if, indeed, it is applicable at all.

Even if this court accepts, *arguendo*, plaintiff's contention in Count II that Ames-Ennis was an unnamed third-party creditor beneficiary of the agreement between the Secretary and Midlothian, then it still appears that the government would be liable only if it were found that Midlothian's alleged non-performance were not excused. The primary question of Midlothian's liability to Ames-Ennis must be decided according to the state common law of contracts. The liability of the United States could only arise upon a subsequent finding that Ames-Ennis, as unnamed third-

---

3. *Compare, e. g.*, 28 U.S.C. § 2679(a):

The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title [the FTCA],

and the remedies provided by this title in such cases shall be exclusive.

This section would appear to be dispositive of the question of the applicability of § 1702 to the tort claim asserted in Count I.

party beneficiary would be entitled to enforce against the Secretary the alleged promise running from Midlothian to the Secretary that there should remain no unpaid balances upon completion of the project. This question is clearly collateral, and so remote from the main issue that this court cannot find in it anything at all which would require exercise of its jurisdiction under 28 U.S.C. § 1331.

As the Court of Appeals for the Third Circuit stated in *Lindy v. Lynn*, 501 F.2d 1367, 1369 (3d Cir. 1974), "the fact that a contract is subject to federal regulation does not, in itself, demonstrate that Congress meant that all aspects of its performance or nonperformance are to be governed by federal law rather than by the state law applicable to similar contracts in businesses not under federal regulation." *But see Ghent v. Lynn*, 392 F.Supp. 879, 882 (D.Conn.1975).

The appropriate rule in this circuit is stated in *Burgess v. Charlottesville Savings and Loan Association*, 477 F.2d 40, 43–44 (4th Cir. 1973):

> As one Court has well expressed it, "[I]f the concept of 'federal question' is to have any meaning, the court must look beyond the verbiage of a complaint to the substance of the plaintiff's grievance, and dismiss the action, where no real basis for federal jurisdiction exists." Thus, "[T]he mere assertion in a pleading that the case is one involving the construction or application of the federal laws does not authorize the District Court to entertain the suit" nor does federal jurisdiction attach on the bare assertion that a federal right or law has been infringed or violated or that the suit "takes its origin in the laws of the United States." To satisfy the statutory jurisdictional requirement, a federal right must be a "real and substantial" issue in the case and "must be an element of the *plaintiff's* cause of action" (Italics in opinion). It is often true that, "[A] mere incidental or collateral federal question may appear, or may lurk in the background of the record, but this is not a sufficient or adequate basis upon which federal jurisdiction may attach." Simply stated, an action arises under federal law only if it "really and substantially involves a dispute or controversy respecting the validity, construction or effect of such a law, upon the determination of which the result depends." In ascertaining whether there is a real federal issue upon "which the result depends", the Courts have observed "the distinction between controversies that are basic and those that are collateral, between disputes that are necessary and those that are merely possible" and federal question jurisdiction attaches only "to cases where the plaintiff's cause of action, *the rule of substance under which he claims the right to have a remedy*, is the product of federal law." (Emphasis added.)

(footnotes omitted). This is a case in which the "distinction between disputes that are necessary and those that are merely possible" is crucial. Federal common law is simply not indispensable to the resolution of the "necessary" contract issue in this case.[4]

### 28 U.S.C. § 1337

The plaintiff next seeks to invoke the jurisdiction of this court under 28 U.S.C. § 1337:

> The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce . . . .

---

4. The plaintiff urges this court to accept the rule of *Trans-Bay Engineers and Builders, Inc. v. Hills*, 179 U.S.App.D.C. 184, 191, 551 F.2d 370, 377 (1976), and *Ghent v. Lynn*, 392 F.Supp. 879, 882 (D.Conn.1975), to the effect that there is "federal question" jurisdiction in the case of a suit against the Secretary of HUD. This court declines to do so. The decision in *Trans-Bay* appears to have been based upon equitable considerations not present in this case. The *Ghent* decision would clearly be wrong in this circuit under *Burgess v. Charlottesville Savings and Loan Ass'n*, 477 F.2d 40 (4th Cir. 1973), insofar as it states that "*any* claim[s] against the government, even though it does not require the construing of a federal statute or regulation, is still one arising under federal common law." 392 F.Supp. at 882 (emphasis added).

 

It is submitted, correctly, that the Federal Housing Act was enacted pursuant to the commerce power. *Davis v. Romney*, 490 F.2d 1360, 1365–66 (3d Cir. 1974). This fact alone, however, is not sufficient to mandate the exercise of this court's jurisdiction. In *Davis v. Romney, supra*, cited by the plaintiff here, the plaintiffs alleged that FHA officials violated a specific provision of the Act. Similarly, in *Winningham v. United States Department of Housing and Urban Development*, 512 F.2d 617, 621–22 (5th Cir. 1975), in which the Fifth Circuit found § 1337 jurisdiction, the plaintiff directly attacked the constitutionality of a section of the Housing and Urban Development Act of 1965 but was unable to meet the jurisdictional amount required by § 1331.

In this case, it is not alleged that the Secretary or the Administrator violated any provision of the Act, nor is it alleged that the Act or any portion of it is unconstitutional. This court believes the language of *Burgess* quoted *supra* to be equally applicable to the question of jurisdiction under 28 U.S.C. § 1337 and, accordingly, finds no jurisdiction under that section to hear this case.

#### Mandamus

Finally, the plaintiff asserts that this court has jurisdiction under 28 U.S.C. § 1361. This is plainly not so. In order for jurisdiction under the mandamus statute to lie, the plaintiff must show: "(1) that a public official has a plain duty to perform certain acts; (2) that the plaintiff has a plain right to have those acts performed; and (3) that there exists no other adequate remedy by which the plaintiff's rights can be vindicated." *Cook v. Arentzen*, 582 F.2d 870, 876 (4th Cir. 1978). The plaintiff in this case has not made any of the required showings.

Since this court finds no basis upon which it might exercise its jurisdiction over

either Count I or Count II of the Complaint, those counts naming as defendant the Secretary of Housing and Urban Development, these counts must be dismissed.[5] The remaining two counts, naming Midlothian and Maryland National Bank, assert claims based strictly on state law. These too must be dismissed.

Accordingly, it is this 23rd day of April, 1979, by the United States District Court for the District of Maryland, ORDERED:

That the motions to dismiss of Midlothian Limited Partnership, Arnold L. Karp, Irwin Nestler and the Secretary of Housing and Urban Development be, and the same hereby are, GRANTED; and

That the complaint and the counterclaim in their entirety be, and the same hereby are, DISMISSED.

---

5. Although it appears that the Court of Claims may have jurisdiction over Count II, there seems little basis to suppose that the court has or would exercise jurisdiction over Counts III and IV under the doctrine of pendent jurisdiction. Count I, sounding in tort, is without the court's jurisdiction. Transfer, which has not been requested, appears inappropriate. 28 U.S.C. § 1406(c).