**GIANNETTI BROTHERS CONSTRUCTION CORPORATION, a Florida corporation, Plaintiff,**

v.

**LEE COUNTY, FLORIDA, a political subdivision of the State of Florida, Defendant.**

**No. 83–68 CIV–FtM–15.**

United States District Court, M.D. Florida, Fort Myers Division.

May 4, 1984.

---

James B. Tilghman, Jr., Scott D. Sheftall, Floyd, Pearson, Stewart, Richman, Greer, Weil & Zack, P.A., Miami, Fla., for plaintiff.

Thomas F. Icard, Jr., Donald E. Hemke, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, Fla., for defendant.

### ORDER

CASTAGNA, District Judge.

This case presents the Court with a novel question of federal jurisdiction that is a matter of first impression. The Defendant has filed a Motion To Dismiss asserting that the Court lacks jurisdiction under 28 U.S.C. § 1331, the general federal question jurisdictional provision. Plaintiff has contested that assertion contending that the Complaint states a claim under numerous regulations promulgated by the Environmental Protection Agency (EPA).

The facts presented in the Plaintiff's Complaint, which must be taken as true for the purposes of a motion to dismiss, *see e.g. American Invs-Co Countryside, Inc. v. Riverdale Bank*, 596 F.2d 211, 213 (7th Cir.1979), establish that this controversy arises from the construction of the Lee County Fort Myers Central Sewer District project, EPA Project No. C/20392060. Plaintiff Giannetti Brothers Construction Corp. entered into an agreement with Defendant Lee County to act as the contractor of the sewer project. Pursuant to the various contracts comprising the agreement, Plaintiff was to receive fixed prices for completion of each portion of the work according to detailed specifications.

The Complaint alleges that the EPA was to provide 80% of the funding for the project and that EPA regulations mandated the inclusion of various contractual provisions in the agreement. The only "regulation" specifically named in the Complaint— although Part 35 is appended to the Complaint in its entirety—is 40 CFR Part 35, Subpart E, Appendix C–2 (December 29, 1976). Appendix C–2 promulgates EPA Form 5720–10 (4–77), entitled "Required Provisions Construction Contracts."[1] The relevant contract provisions for present

---

1. The present versions of these provisions can be found at 40 CFR Part 35, Subpart E, Appen-   dix C–2, (1983).

purposes primarily deal with "equitable adjustments" to be made in the fixed contract prices when the contractor incurs increased expenses because of changes in work specifications, differences in site conditions or unexpected delays in the work schedule due to no fault of the contractor. The Plaintiff asserts that these regulations directly provide the rights and remedies upon which the suit is based. The Complaint seeks compensation for five specific types of adjustments, such as increased costs stemming from failure to provide proper plans and increased costs caused by resulting design changes. A further claim is included for wrongful withholding of "retainage monies" intended to insure completion of the project.

Based upon this background, the Defendant asserts that this controversy does not engender sufficient federal involvement to satisfy the requirement of federal question jurisdiction under § 1331. The Defendant contends that Plaintiff's Complaint attempts to "bootstrap" a "garden-variety state law breach of contract action" into a federal question by merely citing EPA regulations. The crux of this argument is that although EPA regulations required the "equitable adjustment" provisions to be included in the contract as a prerequisite to EPA funding, *see* 40 CFR § 35.938-8 (1975),[2] Plaintiff's remedy is for breach of those contract provisions based upon state contract law. In short, the Defendant acknowledges that a federal question may "lurk in the background" of this case, but argues that the EPA regulations at issue are "incidental" to the main thrust of the action—state law breach of contract.

Plaintiff counters that the contract provisions involved are remedial provisions required by the EPA regulations and that without these provisions, it would have been forced to resort to common law remedies for breach of contract. This argument seems to urge that the Plaintiff is in fact proceeding with a claim under the regulations themselves, rather than under the contract provisions mandated by those reg-

ulations. Seminal to this argument is the fact that the EPA regulations require the contract to contain the provisions in question as specified in EPA forms. *See* 40 CFR Part 35, Subpart E, Appendix C-2 (December 1976) (EPA form 5720-10). To that end, the Plaintiff has attached to the Complaint the mandatory contract forms designated in the EPA regulations, as opposed to the actual contract provisions entered into pursuant to those regulations.

Turning now to the legal authority with which to gauge the jurisdictional issue, the Eleventh Circuit has recently summarized the standards for ascertaining whether federal question jurisdiction attaches within a particular case. In *Mobil Oil Corp. v. Coastal Petroleum Co.*, 671 F.2d 419 (11th Cir.1982), *cert. denied*, 459 U.S. 970, 103 S.Ct. 300, 74 L.Ed.2d 281, the Court observed:

> For a case to arise under federal law, a right or immunity created by that law must be an essential element of the plaintiff's claim; the federal right or immunity that forms the basis of the claim must be such that the claim will be supported if the federal law is given one construction or effect and defeated if it is given another. *Maxwell v. First Nat'l Bank of Monroeville*, 638 F.2d 32, 35 (5th Cir. 1981); *In Re Carter*, 618 F.2d 1093, 1100 (5th Cir.1980), *citing Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936).... [W]e look to the complaint unaided by anticipated defenses and with due regard to the real nature of the claim. *Maxwell*, 638 F.2d at 35; *Gully*, 299 U.S. at 113, 57 S.Ct. at 98. "A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction or effect of such a law, upon the determination of which the result depends ...." (citing *Heirs of Burat v. Bd. of Levee Comm'rs*, 496 F.2d

---

**2.** This regulation can be presently found at 40      CFR § 35.938-8 (1983).

1336, 1342 (5th Cir.), *cert. denied,* 419 U.S. 1049, 95 S.Ct. 625, 42 L.Ed.2d 644 (1974)).

*Id. See also Ray v. Tennessee Valley Authority,* 677 F.2d 818, 825 (11th Cir.1982), *cert. denied,* 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983). With this general statement of the law in mind, especially the *Gully* standard, the parties have offered various cases as controlling in the instant case. While none of the cited authorities deal with factually identical situations—*remedial* contract provisions *mandated* by federal regulation—the Court finds two lines of cases particularly persuasive.

The first line of cases deals with suits brought by building contractors in relation to disputes over construction projects paid for or in some way regulated by the Department of Housing and Urban Development (HUD) or a subdivision thereof, the Federal Housing Administration (FHA). The first such case is *Lindy v. Lynn,* 501 F.2d 1367 (3d Cir.1974), where a building contractor received a construction mortgage that was insured by the FHA. Pursuant to FHA regulation, the mortgagee required the plaintiff contractor to place various sums in escrow and on deposit, for which sums the mortgagee issued a Morgagee's Certificate and an Escrow Agreement that were both in a form prescribed by the FHA. When the plaintiff thereafter defaulted on the mortgage, the mortgagee was notified that the sums put on deposit and in escrow would be set off against any insurance claim the mortgagee might have. The plaintiff contractor then brought suit against HUD contending that under the terms of the Mortgagee's Certificate and the Escrow Agreement, the FHA did not have the right to set off the sums involved against the mortgagee's insurance claim. *Id.* at 1368.

The *Lindy* Court found no federal jurisdiction noting that the fact that a contract is "subject" to federal regulation does not necessarily confer federal jurisdiction. The Court characterized the dispute as merely relating to the construction and interpretation of contractual documents. As a concluding remark, this Third Circuit panel noted: "The fact that these documents were subject to the regulations of the FHA is not significant, since we know of no federal statutory policy which would require federal law to determine their operation and effect." *Id.* at 1369.

It is apparent to the Court, however, that the HUD cases lie along a continuum with *Lindy* at one end finding no federal question and *Trans-Bay Engineers and Builders, Inc. v. Hills,* 551 F.2d 370 (D.C.Cir. 1976), lying at the other finding a federal question. While the factual details need not be recounted in depth, *Trans-Bay* dealt with a minority contractor who sought the return of "hold-back" sums retained by HUD during the construction of a housing project financed through the National Housing Act, 12 U.S.C. § 1715Z-1. The plaintiff directly sued HUD, *inter alia,* on a theory of equitable lien/unjust enrichment. The *Trans-Bay* Court found a federal question and distinguished *Lindy* by noting: "Here we are asked to determine whether the Secretary of HUD has an obligation to plaintiff Trans-Bay that is not rooted in a contract between them, but rather on equitable rights generated by HUD's course of activities pursuant to federal statutes, including the contracts it has sponsored, and prescribed for others, as a condition of federal aid. The claim of federal right is dependent on federal common law." *Id.* at 377 (citations omitted). It is significant to note that HUD was directly a party to that suit.

*Trans-Bay* and *Lindy* demonstrate that a determination of federal jurisdiction must be made upon the circumstances of each case. To the extent that the cases can be read as conflicting, the trend seems to have been for more courts to follow the *Lindy* Court's reasoning. See *Jemo Assoc. v. Greene Metro. Housing Authority,* 523 F.Supp. 186, 189 (S.D.Oh.1981) and the cases cited therein. At any rate, the Eleventh Circuit has limited *Trans-Bay* to the specific facts before that Court and the extensive HUD activities involved there. *See Local Division 732, Amalgamated*

*Transit Union v. Metropolitan Atlanta Rapid Transit Authority,* 667 F.2d 1327, 1344 (11th Cir.) ("dispositive" differences as to *Trans-Bay* included fact that Secretary of Labor was directly a party to the suit and "equitable rights generated by Department of Labor's activities" were involved in *Trans-Bay* ), *reh. en banc denied* 671 F.2d 1382 (1982). For other cases following the *Lindy* Court's analysis, see also *Ippolito-Lutz, Inc. v. Harris,* 473 F.Supp. 255, 259 (S.D.N.Y.1979) (where HUD was not party to contract, the fact that contracts were on forms "prescribed" by the FHA does not render controversy over their terms to be matter of federal law); *Penn State Constr. Co. v. Associated-East Mortgage Co.,* 457 F.Supp. 396, 399–400 (W.D.Pa.1978) (although accounting for *Trans-Bay,* where the allegations were "essentially contractual in nature," and where the suit turned upon interpretation of various contract provisions between plaintiff and principals other than HUD, the latter's involvement was collateral); *Becker v. Beame,* 454 F.Supp. 867, 870 (S.D.N.Y. 1978) (social security act case where plaintiff brought suit for alleged wrongful withholding of money by city under contract to provide services for needy; although federal law "engendered the need" for the contract, no federal question was presented by the breach of contract action).

The second line of cases that the Court finds particularly persuasive stems from the Fourth Circuit's decision in *Burgess v. Charlottesville Savings and Loan Assoc.,* 477 F.2d 40 (4th Cir.1973) and its progeny. *Burgess* was a suit brought in state court by a widow against a savings and loan that failed to provide life insurance for plaintiff's deceased husband pursuant to a contractual provision in a loan agreement. The defendant attempted to remove the action to federal court asserting that the case involved a federal question because the contractual provision for life insurance was included in the loan agreement pursuant to Federal Reserve regulations issued under the authority of the Truth-in-Lending Act, 15 U.S.C. § 1601 (TILA). The *Bur-*

*gess* Court, however, found no federal question removal jurisdiction.

In declining jurisdiction, the Court determined that plaintiff's "cause of action" was in reality a breach of contract action for failure to procure insurance. Although the contractual provision plaintiff sought to proceed under originated in a Federal Reserve form and the provision was intended to comply with TILA, those factors were merely "co-incidental." 477 F.2d at 44. The Court explained that TILA was intended to ensure full disclosure by lenders to borrowers, and concluded that plaintiff's breach of contract action

> involves a construction of the language in the form used by the defendant to give the disclosure required under the Truth in Lending Act, it is true, but not for the purpose of determining whether that language represents sufficient compliance with the Act (and thus a construction of federal law) but for the purpose of determining whether such language will under the law of Virginia constitute a valid contract to procure.

*Id.* at 45. For cases following this reasoning, see *Westland Oil Dev. Corp. v. Summit Transportation Co.,* 481 F.Supp. 15, 18–19 (S.D.Tex.1979), *aff'd,* 614 F.2d 768 (5th Cir.1980) (one paragraph affirmance on basis of district court opinion); *Ames-Ennis, Inc. 'v. Midlothian Ltd. Partnership,* 469 F.Supp. 939, 944 & n. 4 (D.Md. 1979) (HUD case following *Burgess* and *Lindy,* and refusing to follow *Trans-Bay* ).

Gauging from this background, the Court is persuaded that this case does not involve a question of federal law sufficient to invoke this court's jurisdiction pursuant to § 1331. Under the first step in the federal question formulation set out in *Mobil Oil, supra,* this case does not involve a right or remedy created by federal law. Rather, the action is merely a breach of contract action for failure to undertake "equitable adjustments" as required in the contract. Contract obligations are creatures of state law, *see, e.g., Gully,* 299 U.S. at 114–15, 57 S.Ct. at 98–99, and as *Lindy, Burgess,* and their progeny demonstrate,

the mere fact that these provisions were included in the contract per federal requirements does not turn this action into a federal question case.

Plaintiff, for this reason, has attempted to characterize this action as resting upon the regulations themselves, rather than the contract provisions entered into as required by those regulations. As noted earlier, the Complaint attaches copies of the regulations and contract forms, but not the relevant portions of the "equitable adjustment" provisions entered into under the actual contract. Plaintiff therefore asserts that as the "master to decide what law he will rely upon," *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), it has demonstrated a federal question. This argument is only partially correct.[3] The Court must further look to the "real nature" of the Complaint in determining whether federal question jurisdiction exists. *See Ray*, 677 F.2d at 825. If the Court were to take each reference in the Plaintiff's Complaint to the EPA forms in question and replace it with the corresponding portion of the equitable adjustment contract provisions entered into, it would be readily apparent that this action is nothing more than a contract action. Plaintiff's characterization therefore does not ultimately control.

■ Furthermore, Plaintiff has argued that it would be totally without a remedy save for the regulations, as "equitable adjustment" is a term of art used exclusively by the EPA under federal law. The contention, however, is simply erroneous. Equitable adjustments have a long history in Florida contract law, and in fact, price adjustments are often *implied* into construction contracts. As stated by the Florida

Supreme Court in *DeLotto v. Fennell*, 56 So.2d 518, 520 (Fla.1951):

> When parties enter into an agreement or contract for construction work and during the progress thereof alterations or changes are requested in the form of extras and otherwise, then the law implies an obligation to pay the reasonable costs thereof in addition to the stipulated sum named by the parties in the original agreement.

Similar contract provisions using the same "equitable adjustments" terminology as involved here have often been upheld or implied by Florida Courts. *See, e.g., Southern Bell Telephone and Telegraph Co. v. Acme Elect. Contractors, Inc.*, 418 So.2d 1187, 1189 (Fla. 4th DCA 1982) (allowing recovery on implied contract theory for construction costs incurred in excess of bid price on the basis of changes requested by Southern Bell on the construction project); *Tuttle/White Constructors, Inc. v. State*, 371 So.2d 1096, 1097 (Fla. 1st DCA 1979) (declining contractor's claim for additional compensation stemming from unexpected damages, under a general construction contract, when the claims were untimely); *Town of Longboat Key v. Carl E. Widell & Son*, 362 So.2d 719, 722 (Fla. 2d DCA 1978) (upholding recovery under a "changed conditions clause," the purpose of which was to allow an "equitable adjustment" in a public works contract); *Tassinari v. Chaney*, 187 So.2d 376, 378 (Fla. 1st DCA 1966) (upholding adjustment for contractor where contract contained provision permitting "claims for extras"); *Diana Stores Corp. v. M & M Electric Co.*, 108 So.2d 486, 488 (Fla. 3d DCA 1959) (upholding equitable adjustment due to deviation from electrical specification in contract in order to comply with higher stan-

---

**3.** Plaintiff's argument, of course, is correct but it does not go far enough. The *Bell* case dealt with a federal court's jurisdiction to determine its jurisdiction. The Supreme Court recently explained that if the plaintiff's asserted federal claims are not "wholly insubstantial and frivolous," the federal court has jurisdiction to determine whether a federal "cause of action" has been stated. *Jackson Transit Authority v. Local Division 1285, Amalgamated Transit Union,* *AFL–CIO–CLC,* 457 U.S. 15, 21 n. 6, 102 S.Ct. 2202, 2206 n. 6, 72 L.Ed.2d 639 (1982). As to the first level of jurisdiction, Under *Bell v. Hood* the plaintiff's characterization of the complaint controls. *Id.* Plaintiff *Giannetti Brothers* is therefore correct when it states that it alone may decide what law to rely upon. That does not stop a further inquiry into the true federal nature of the claim, however. *See id.*

dards in City's electrical code); *Odom v. Barrett,* 56 So.2d 122, 122–23 (Fla.1951) (contract provided for "equitable adjustment," although court remanded for taking of further evidence), *later appeal,* 67 So.2d 200 (Fla.1953). Plaintiff's attempt to label the equitable adjustment remedy as exclusively federal will not stand scrutiny. Rather, the "rule of substance under which [Plaintiff] claims the right to have a remedy" is state contract law. *See Burgess,* 477 F.2d at 44 (quoting *Wechsler, Federal Jurisdiction and the Revision of the Judicial Code,* 13 *Law & Contemp. Prob.* 216, 225 (1948).

Alternatively, even if these regulations could be viewed as creating a federal remedy, this case would not "arise under" federal law per § 1331 because this dispute would not be "required by some distinctive policy of a federal statute to be determined by application of federal legal principles ...." *Mountain Fuel Supply Co. v. Johnson,* 586 F.2d 1375, 1381 (10th Cir. 1978), *cert. denied,* 441 U.S. 952, 99 S.Ct. 2182, 60 L.Ed.2d 1058 (1979). Plaintiff has not demonstrated to the Court a distinct federal policy applicable to this case. The EPA is not a party to this suit and was not a party to the contract, as clearly stated in Paragraph 1(b) of Appendix C–2. The only viable "federal purpose" of these regulations that Plaintiff has suggested to the Court is ensuring that public works contractors are fairly compensated for their construction services.[4] Plaintiff's Memorandum In Opposition at 19–20. That federal purpose, however, is satisfied by the mere inclusion of the "equitable adjustment" provisions in the contract. Once those provisions are included in the agreement, the only potential federal interest would be if the state courts and state law could not be trusted to properly and fairly marshal those contract provisions. But in fact, state courts are presumed competent

to adjudicate matters before them, *see e.g., Allen v. McCurry,* 449 U.S. 90, 105, 101 S.Ct. 411, 420, 66 L.Ed.2d 308 (1980), and this "general distrust" of state court competence should especially be discouraged in matters particularly within the state law realm such as contract law.

Also important to the state court competence issue is that both the contract and EPA Form 5720–10 from which it originates provide in paragraph 7 that any disputes arising out of the contract will be determined "in a court of competent jurisdiction within the State in which the Owner is located." This terminology clearly signifies that state courts are competent to entertain these matters and properly secure the potential federal interest involved—ensuring payment of the contractors.

Lastly, as to any potential federal policy interest, Plaintiff has not demonstrated any particular deficiency or disruptive effect that would result from the application of state contract law to these contract provisions. If the Plaintiff's argument is accepted that a federal question is presented here by the need for uniform enforcement of the "equitable adjustment" regulations and contract provisions entered into thereunder, the Court would in essence be forced to fashion a "federal common law" for interpreting contracts containing EPA mandated provisions. This result should be avoided if at all possible for as the Court noted in *American Invs-Co Countryside, Inc. v. Riverdale Bank,* 596 F.2d 211, 218 (7th Cir.1979), "significant conflict" between some federal policy and the use of state law must be demonstrated to fashion federal common law. "General assertions of the need for a uniform body of governing law are insufficient, particularly when there is no indication that application of the laws of the various states would result in varying or inconsistent rights and duties

---

4. Plaintiff also attempts to argue that one federal policy furthered by these regulations is to encourage increased participation in EPA grants programs by Minority Business Enterprises (MBE). Undoubtedly, this is one policy of the EPA. *See e.g. Grants For Construction of Treatment Works,* Policy For Increased Use of Minor-

ity Consultants and Construction Contractors, 43 Fed.Reg. No. 248, 60220–23 (December 26, 1978). The Plaintiff, however, has not articulated one way in which this policy is furthered by the regulations and contracts in question so as to necessitate the application of federal legal principles.

for the federal government." *Id.* The Plaintiff here has given no more than general assertions of the need for uniform national policy and has not demonstrated that inconsistent contractor rights would emerge under differing states' contract laws. Clearly, Plaintiff has not demonstrated any overriding federal policy that must be vindicated by application of federal legal principles.

Plaintiff has attempted to distinguish each of these cases. Some, Plaintiff argues, did not involve contract provisions "mandated" by federal regulation, while others did not involve remedial provisions. To the extent that Plaintiff urges that none of these cases is factually identical to this case, and thereby legally controlling, the Court is in agreement. But under the general principles propounded as applied to the facts of this case, the Plaintiff's attempt to distinguish the cited cases is not persuasive.

As a final matter, Plaintiff sought to rely upon *Mountain Fuel Supply Co. v. Johnson,* 586 F.2d 1375, 1381–82 (10th Cir.1978), *cert. denied,* 441 U.S. 952, 99 S.Ct. 2182, 60 L.Ed.2d 1058 (1979). In that case a fuel supplier filed a state court breach of contract action against a fuel buyer alleging that the defendant buyer refused to pay for fuel delivered pursuant to written agreement. Upon removal, the appellate court ultimately determined that the complaint stated a federal question upon its face. As the Court noted, however, the operative allegations of the complaint were that the buyer breached the contract by refusing to pay a price for the fuel that was in fact in excess of the contract price. The plaintiff claimed this enhanced price was due to intervening price controls issued by the Cost of Living Council that purportedly permitted a modification of the contract terms. As the *Mountain Fuel* Court observed, therefore, "the very predicate for the damage claim of [the plaintiff supplier] in the breach of contract sense is that [plaintiff] is entitled to a sum in excess of the originally agreed contract price for crude oil based upon the 'Phase IV' oil regulations issued by the Cost of Living Council." *Id.* at 1381. In short, *Mountain Fuel* involved a case where construction or application of the regulations would modify the contract terms and directly affect the price the plaintiff could charge under the contract. Here, in contrast, the regulations merely designate what provisions the contract will contain, and those provisions and the regulations are entirely consistent. Utilizing the Plaintiff's own argument, *Mountain Fuel* is clearly distinguishable from the instant case.

Finally, the Court notes that a common sense evaluation of the Complaint and the regulations reveals that this action is in reality brought under the contract, not the regulations. The only references to the regulations in the Complaint are to Appendix C–2 of 40 CFR Part 35, Subpart E (1976), which does nothing more than promulgate EPA Form 5720–10, the EPA form contract incorporated by the parties in this case. Plaintiff has not brought this action, for example, under 40 CFR § 35.-938–8—the EPA regulation that requires inclusion of the contract provisions in question—for failure to include these mandated provisions. Although Defendant contends that the Plaintiff could not bring such an action,[5] the more relevant point is that this is not such an action for failure to comply with EPA regulations by including required provisions, but a contract action under provisions taken from EPA forms. Further-

---

**5.** The Defendant argues that as a contractor, Plaintiff has no judicially enforceable rights under the Clean Water Act citing *Commonwealth of Pa. v. Williamsport Sanitary Authority,* 497 F.Supp. 1173 (M.D.Pa.1980), and *Soverign Constr. Co. v. City of Philadelphia,* 439 F.Supp. 692 (E.D.Pa.1977), *aff'd without published opinion,* 582 F.2d 1276 (3d Cir.1978). Plaintiff does not challenge the correctness of this argument, but instead argues that the existence or non-ex-

istence of a private right of action under the Act is immaterial to this action on the regulations. As the *Burgess* Court noted, however, the absence of a private right of action under the statute that spawned the regulations purportedly providing federal question jurisdiction is certainly a relevant matter for consideration. 477 F.2d at 45. At any rate, the Court need not reach this argument as other adequate grounds support this decision.

more, Paragraph 2(d) of Form 5720–10 provides that upon the contractor's claim for an equitable adjustment, the contract shall be modified in writing accordingly. Therefore, the contract not only provides the remedy of equitable adjustment, but any claim made by the contractor also becomes part of the document itself.

Based upon this background, the Court finds that the Plaintiff's claims are state law breach of contract claims and the fact that the contract's "equitable adjustment" provisions were mandated by EPA regulations does not change the state law character of those claims. Even if those claims could be found to "originate" in federal law, they do not involve the vindication of some federal policy so as to require the application of federal legal principles. This case does not "arise under" the laws of the United States for purposes of 28 U.S.C. § 1331 and therefore the Court does not have federal question jurisdiction. Accordingly, it is

ORDERED:

1. The Defendants' Motion To Dismiss is granted and this cause is dismissed for lack of jurisdiction.

2. All remaining pending motions are rendered moot by this Order.