JEMO ASSOCIATES, INC., Plaintiff,

v.

GREENE METROPOLITAN HOUSING AUTHORITY and Secretary, United States Department of Housing and Urban Development, Defendants.

FORBES, HUIE AND ASSOCIATES, INC., Plaintiff,

v.

GREENE METROPOLITAN HOUSING AUTHORITY, Defendant.

Nos. C–3–80–504, C–3–80–505.

United States District Court, S. D. Ohio, W. D.

Sept. 14, 1981.

William F. Schenck, Xenia, Ohio, for plaintiffs.

Jerome G. Menz, Xenia, Ohio, for defendant Greene Metropolitan Housing Authority.

Robert J. Fogarty, Asst. U. S. Atty., Dayton, Ohio, for defendant Secretary, HUD.

DECISION AND ENTRY ON DEFENDANTS' MOTIONS TO DISMISS; MOTIONS GRANTED AND COMPLAINTS DISMISSED FOR LACK OF COURT'S SUBJECT MATTER JURISDICTION; TERMINATION ENTRY

RICE, District Judge.

The captioned causes are before the Court upon a motion filed by the defendant, Greene Metropolitan Housing Authority

(GMHA), in each case, seeking an Order dismissing plaintiffs' complaints for the reason that this Court lacks subject matter jurisdiction over same. In addition, in Case No. C–3–80–504, the defendant, Secretary, Housing and Urban Development (HUD), has filed a motion to dismiss upon four grounds, to wit:

1) The Court lacks jurisdiction over the subject matter;

2) The action is barred by the statute of limitations, 28 U.S.C. § 2401(a) (1976);

3) The complaint fails to state a claim against HUD upon which relief can be granted; and

4) Plaintiff has failed to join an indispensable party under Fed.R.Civ.P. 19.

Based upon the reasoning set forth below, the Court finds said motions to be well taken insofar as they allege lack of subject matter jurisdiction and same are, therefore, granted. The within complaints are dismissed.

## I. FACTS

Plaintiffs, Jemo Associates, Inc. (Jemo) and Forbes, Huie and Associates (Forbes), are Ohio corporations and joint venture partners in housing developments. In 1973 and 1974, plaintiffs sought to obtain approval and financing from the GMHA, an Ohio public corporation, and HUD for a low-income housing project of 50 units in Xenia, Ohio. Pursuant to statutory authorization, 42 U.S.C. § 1401 et seq. (National Housing Act) and regulations promulgated thereunder, HUD established a program for local housing authorities to receive federal funds to develop low-rent public housing. The program requirements were published as a "HUD Low Rent Turnkey Handbook." GMHA was a local housing authority under the program.

In late 1973, HUD and GMHA solicited proposals for low income housing in Xenia, and in December of that year the plaintiffs, in a joint venture known as "Forbes-Jemo," submitted a proposal. GMHA notified plaintiffs in January 1974 that their propos-

al, to the extent of 25 units for elderly housing, was tentatively selected. In March and April, plaintiffs held further meetings with GMHA and HUD to negotiate the purchase price of the land and to discuss HUD requirements and the remaining stages of the program. In May, plaintiffs drilled soil borings on the proposed site and otherwise went forward on the project at defendants' urging.

However, in June and July of 1974, defendants informed Forbes-Jemo that the proposed price of the project was too low and must be revised. Plaintiffs submitted a cost revision, but in August defendants told them that their proposal was unacceptable as exceeding the HUD prototype cost limitation. After further negotiation with GMHA, HUD confirmed the rejection of plaintiffs' proposal in November of 1976.

In November of 1980, Jemo filed suit against GMHA and HUD, and Forbes sued GMHA, raising virtually identical claims for relief. Plaintiffs alleged that they properly followed GMHA procedures and met HUD requirements, while GMHA failed to comply with such procedures, and that GMHA wrongfully deprived plaintiffs of the opportunity to perform the contract. Plaintiffs prayed for relief against GMHA and HUD in the nature of damages, lost profits, and expenses.

## II. JURISDICTION

In both actions, plaintiffs have cited 42 U.S.C. § 1401 et seq. as the statute granting this Court jurisdiction over the subject matter of these lawsuits. The only relevant portion of those statutes, § 1404a, however, merely states that the United States Housing Authority (the functions and duties of which have since been transferred to the Secretary of HUD, 42 U.S.C. § 3534(a)) may sue or be sued with respect to its housing programs. In effect, this provision waives the sovereign immunity of HUD but does not, in and of itself, provide an independent source of federal jurisdiction. *Ippolito-Lutz, Inc. v. Harris*, 473

F.Supp. 255, 259 (S.D.N.Y.1980).[1] Presumably, plaintiffs meant to rely upon two jurisdictional provisions: 28 U.S.C. § 1331(a) (general federal question) or 28 U.S.C. § 1346(a)(2) (contract claims against the United States). Nevertheless, these actions will fail under these latter provisions.

■ The general federal question statute grants to federal district courts original jurisdiction in actions "arising under the . . . laws . . . of the United States." 28 U.S.C. § 1331(a). Plaintiffs essentially allege a breach of contract against HUD and GMHA, claims which would usually be governed by state law and would not present a federal question. Aside from HUD being a party to one of the present actions, the complaints do not make clear the federal involvement in these contract disputes.[2] Apparently, the resolution of these disputes *may* involve interpretations of federal regulations and a HUD handbook.

These elements, however, form too tenuous a relationship to federal law upon which to ground federal jurisdiction. In disputes similar to the one considered herein, relevant legal authority stated the issue to be whether the federal elements are merely ingredients of a larger state law claim or whether they predominate in the contractual dispute. As part of this inquiry, courts have examined the facts to determine if the remedy the plaintiffs seek is premised on a breach of contract which cause of action arises under state law; if federal law creates the remedy sought; and/or if the right to relief requires either the construction or interpretation of a federal statute, or the application of federal principles in order to vindicate a distinctive policy of the federal housing laws. *See Lindy v. Lynn,* 501 F.2d

1367, 1369 (3d Cir. 1974); *Ippolito-Lutz, Inc. v. Harris, supra,* at 259. Based on the somewhat limited facts presented by plaintiffs, note 2 *supra,* this Court concludes, utilizing the above stated principles, that no federal questions are at issue in these actions. The remedies the plaintiffs seek are created by state law, are not expressly granted by federal statutes or regulations, do not require interpretation of a federal statute, and are not part of a distinctive federal policy regarding the housing laws.

Numerous courts, in factual situations similar to the present actions, have reached a similar conclusion. In *Lindy v. Lynn, supra,* for example, a defaulting mortgagor sued HUD on the issue of whether the Federal Housing Administration (FHA) could direct a mortgagee to debit the mortgagee's insurance claim against the FHA with two separate letters of credit of the mortgagor which the mortgagee held. The letters of credit had been exchanged pursuant to FHA forms. In *Ippolito-Lutz, Inc. v. Harris, supra,* a building contractor sued HUD to recover the amount of a judgment the contractor had obtained against the federally-subsidized owner of a public housing project. In both cases the court held that state law breach of contract claims were presented and that the claims did not arise under federal law.

■ Moreover, the mere fact that the contract would be subject to federal regulation does not indicate that the performance or nonperformance of the contract should be governed by federal law, rather than by state law governing similar contracts not subject to federal regulation. *Lindy v. Lynn, supra. See also, M. B. Guran Co.,*

---

1. Plaintiffs might also rely upon a parallel provision, 12 U.S.C. § 1702, which states that the Secretary of HUD can sue or be sued with respect to housing programs. Like 42 U.S.C. § 1404a, however, § 1702 merely effects a waiver of sovereign immunity and does not provide a basis for jurisdiction. *See Marcus Garvey Square, Inc. v. Winston Burnett Construction Co.,* 595 F.2d 1126, 1131 (9th Cir. 1979); *Ames-Ennis, Inc. v. Midlothian Limited Partnership,* 469 F.Supp. 939, 942 (D.Md.1979).

2. Neither the complaints nor memoranda of the plaintiffs clearly explain the federal statutes or regulations allegedly involved in this case. The complaints only cite "the United States Housing Act of 1937 as amended (42 U.S.C. § 1401 *et seq.*)" and contain a cryptic reference to the HUD Low Rent Turnkey Handbook as having been "published in the Federal Register." Complaint, Case No. C–3–80–504, ¶ 3; Complaint, Case No. C–3–80–505, ¶ 3. Moreover, the complaints do not cite the HUD regulations which GMHA allegedly violated.

*Inc. v. City of Akron*, 546 F.2d 201, 205 (6th Cir. 1976) (city violation of competitive bid guidelines contained in a HUD handbook did not give use to an implied right of action cognizable in federal court by the disappointed contractor; case seen "as one which is traditionally relegated to state law").

In *Trans-Bay Engineers and Builders, Inc. v. Hills*, 551 F.2d 370 (D.C.Cir.1976), the Court upheld federal jurisdiction pursuant to § 1331(a) in related circumstances. However, that decision can be distinguished from the present case. In that case, HUD, under Section 236 of the National Housing Act, provided mortgage insurance to private lenders and subsidized interest payments accruing on mortgage loans. In addition, HUD was assigned a mortgage upon default of payments by a HUD mortgagee. Unlike the present action, HUD's involvement went beyond being a mere party to a contract. In an action for contract retainages held by HUD as an assignee, the *Trans-Bay* court upheld jurisdiction under § 1331(a), since HUD's obligation was not rooted in contract, but "rather on equitable rights generated by HUD's course of activities pursuant to federal statutes, including the contracts it has sponsored, and prescribed for others, as a condition of federal aid. The claim of right is dependent on federal common law." *Id.* at 377.

A few courts have followed *Trans-Bay* in upholding federal jurisdiction, but those cases involved HUD involvement in housing programs virtually identical to that found in *Trans-Bay*. *See Industrial Indemnity, Inc. v. Landrieu*, 615 F.2d 644, 647 (5th Cir. 1980) (per curiam); *United States v. American National Bank*, 443 F.Supp. 167, 171–72 (N.D.Ill.1977). On the other hand, numerous courts have rejected *Trans-Bay* and concluded that housing contracts regulated by HUD do not confer federal jurisdiction. *See, e. g., Ippolito-Lutz, Inc. v. Harris, supra; Ames Enis, Inc. v. Midlothian Limited Partnership, supra*, at 944 n. 4; *Penn State Construction Co. v. Associated-East Mgt. Co.*, 457 F.Supp. 396, 399–400 (W.D.Pa. 1978); *Molton, Allen & Williams, Inc. v. Harris*, 436 F.Supp. 853, 857 (D.D.C.1977).

These latter courts based this rejection on HUD's far greater involvement in the *Trans-Bay* housing program as compared to HUD's more limited connection to contractual disputes before those courts. While admitting that a reading of these decisions reveals no bright-line distinctions, this Court is in agreement with the latter cases, since HUD's involvement in the instant cases, as noted above, is merely collateral to the disputed contract. Moreover, plaintiffs in the present cases seek damages for breach of contract, not for an equitable lien or unjust enrichment. Such equitable rights were deemed controlling in *Trans-Bay*.

█ Additionally, jurisdiction over HUD will not lie under 28 U.S.C. § 1346(a)(2), which grants federal district courts jurisdiction over contract claims against the United States not exceeding $10,000. In this case, plaintiffs' claims for relief exceed $50,000 in each action.

Finally, HUD also argues that the claims against it are barred by the six-year statute of limitations for civil actions against the United States, 28 U.S.C. § 2401(a). Contract actions "accrue" under this statute on the date of the alleged breach of contract. *Matthew v. United States*, 471 F.Supp. 937, 940 (S.D.N.Y.1979). In the present case, the complaints reveal two dates which might be the date of the breach—August, 1974 (defendants tell plaintiffs that proposal is unacceptable) or November, 1976 (after negotiations with GMHA, HUD "confirms" the rejection). The complaints do not precisely identify either date as that of the breach. Given the rulings above, a decision on this point is unnecessary. The court does note, however, that assuming sufficient information on this issue would be present, the August 1974 date appears to be that of the initial breach of contract, which would be six years before the November 1980 filing of the complaints, thus barring the actions.

Given the above rulings finding lack of subject matter jurisdiction in these cases, the Court finds it unnecessary to reach the

other grounds advanced by HUD in support of its motion to dismiss.

For the aforestated reasons, this Court concludes that it lacks jurisdiction over the present actions and defendants' motions to dismiss for lack of subject matter jurisdiction, Rule 12(b)(1), must be and hereby are granted. The captioned causes are therefore dismissed with prejudice to new actions.

The captioned causes are hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.