TEMPO, INC., Plaintiff,

v.

The CITY OF GLADSTONE HOUSING COMMISSION; Samuel Riley Pierce, Jr., Secretary of the U.S. Department of Housing and Urban Development: the City of Gladstone, Michigan: the Sherwin-Williams Company; Rusco Windows and Doors and Rusco Industries, Inc.; the Gagnon Clay Products Company; and the Richards Brick Company, Defendants.

No. M82–223 CA2.

United States District Court, W.D. Michigan N.D.

July 17, 1984.

Bruce W. Neckers, Grand Rapids, Mich., John T. Reardon, Escanaba, Mich., for plaintiff.

Daniel M. LaVille, Asst. U.S. Atty., Grand Rapids, Mich., Ralph B.K. Peterson, Escanaba, Mich., David D. Brown, Green Bay, Wis., Theodore H. Watts, Meadville, Pa., for defendants.

## OPINION AND ORDER DISMISSING CASE

MILES, Chief Judge.

This suit arose in connection with the construction of a federally assisted housing project. Plaintiff, Tempo, Inc., a Michigan corporation, contracted with the City of Gladstone Housing Commission to build a 52-unit elderly housing project. The City of Gladstone received federal assistance from the Department of Housing and Urban Development (HUD) for the senior citizens complex.

Plaintiff alleges the following involvement of HUD in the construction project:

HUD makes advances, approves loans and governs the relationship between the contractor and the local housing authority by a set of interlocking agreements, all of which are approved and furnished by HUD. HUD makes original inspections of the site. In this particular case, they refused to approve the site for building because of the alleged problems with flooding. HUD inspects the project at least monthly and makes a final inspection before acceptance. HUD must approve the original contract and each amendment or change to it.

Plaintiff's Brief in Opposition, p. 5.

Plaintiff filed suit against the City of Gladstone Housing Commission and the Secretary of HUD in November 1982 alleging that it had completed construction and that defendants had wrongfully failed to pay plaintiff the ten percent (10%) retainage fee of approximately $180,000 to which plaintiff was entitled.

In August 1983, plaintiff amended the complaint alleging damages caused by various factors including defendants' failure to conduct a final inspection and accept the project in a timely fashion and their misrepresentations concerning soil conditions.

In a second amended complaint filed in January 1984, plaintiff added as defendants three suppliers of materials used in the construction of the housing project for breach of contract and breach of warranties.

The government has filed a motion to dismiss and/or for summary judgment. It is the government's contention that there is no waiver of sovereign immunity by the United States, that the Court lacks subject matter jurisdiction over this contract dispute for damages in excess of $10,000, and that plaintiff failed to implement the contractual dispute remedy.

The question of jurisdiction in this case involves a two-step process. First, the Court must determine whether there is a waiver of sovereign immunity by the government. Second, the Court must determine whether there has been a grant of jurisdiction to the District Court. *See Marcus Garvey Square v. Winston Burnett Construction Co.*, 595 F.2d 1126, 1131 (9th Cir.1979).

## I. *Sovereign Immunity*

The government has argued that the Secretary of the Department of Housing and Urban Development is immune from suit under the doctrine of sovereign immunity. The United States Housing Act of 1937, 42 U.S.C. § 1404a, provides that the United States Housing Authority may "sue and be sued" with respect to its functions under this chapter. While the Court in *A.L. Brown & Son v. Department of Housing and Urban Development*, 611 F.2d 997, 1000 (5th Cir.1980), expressed uncertainty as to whether or not section 1404a waives sovereign immunity,[1] the prevailing view is that it does. *See Portsmouth Redevelopment & Housing Authority v. Pierce*, 706 F.2d 471, 475 (4th Cir.1983); *United States v. Adams*, 634 F.2d 1261, 1265 (10th Cir. 1980); *Jemo Associates, Inc., v. Greene Metropolitan Housing Authority*, 523 F.Supp. 186, 187 (S.D.Ohio 1981); *Ippolito-Lutz, Inc. v. Harris*, 473 F.Supp. 255, 259 (S.D.N.Y.1979).

The Court is satisfied that the Secretary is not immune from suits arising under the 1937 Housing Act. Consequently, the focus of this opinion must shift to the issue of subject matter jurisdiction.

## II. *Subject Matter Jurisdiction*

In its first complaint plaintiff asserts jurisdiction under 28 U.S.C. § 1331 because defendant is the federal government and because a federal question exists. Plaintiff also alleges violation of 12 U.S.C. § 1701 *et seq.* In its second amended complaint plaintiff further invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1332, alleging diversity of citizenship.

Plaintiff errs in its reliance upon 28 U.S.C. § 1332 for jurisdiction. For diversity jurisdiction to exist there must be complete diversity between the parties. This means that no opposing parties may be citizens of the same state. *Strawbridge v. Curtiss*, 3 Cranch (7 U.S.) 267, 2 L.Ed. 435 (1806). In the present case the plaintiff, a citizen of Michigan, is suing, among others, the City of Gladstone, also a citizen of Michigan. Complete diversity lacking, this Court does not have jurisdiction under 28 U.S.C. § 1332.

A more difficult matter is whether this Court has federal question jurisdiction under 28 U.S.C. § 1331. Plaintiff has alleged violation of federal statutes as one basis for jurisdiction. In the complaint, however, plaintiff has confused the statutory basis for HUD's involvement in the Gladstone Housing Project. In paragraph 3, plaintiff claims violation of various sections of the National Housing Act of 1948, 12 U.S.C. § 1701 *et seq.* Yet in paragraph 9 plaintiff acknowledges that HUD's assistance came under the United States Housing Act of 1937. This statute is found at 42 U.S.C. § 1401 *et seq.*

The Secretary denied in its answer that the project was assisted under 12 U.S.C. § 1701 *et seq.* Plaintiff does not dispute this assertion. In fact, in its brief plaintiff concedes that the case was improperly pled under 12 U.S.C. § 1701 *et seq.* Plaintiff noted, however, that "to the extent that

---

1. The Court noted that the "sue and be sued" language of section 1404a is more restrictive than the language of 12 U.S.C. § 1702 that was found to be a waiver of immunity. *A.L. Rowan*, 611 F.2d at 1000 n. 3.

The plaintiff has also urged the Court to find that even if section 1404a is a waiver of immunity, that it has been repealed by inference. The basis for such an inference comes from the fact that when the 1937 Act was amended in 1974, section 1404a was omitted from the Act as amended. The Court in *A.L. Rowan*, however, noted that section 1404a was not part of the original 1973 Act, but was added by means of the Housing Act of 1948. Therefore, the Court took the position that the omission of section 1404a merely indicates that it was not part of the 1937 Act and should not be read as a repeal of section 1404a.

improperly pled under 12 U.S.C. § 1701 *et seq.* rather than 42 U.S.C. § 1401 *et seq.* plaintiff should be allowed to amend."

Even were the Court to allow amendment of the complaint to reflect the correct statutory section, plaintiff would still have no direct statutory action that would give this Court subject matter jurisdiction under § 1331.

■ Section 1331 states that district courts have jurisdiction of all civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

An action arises under the laws of the United States if and only if the complaint seeks a remedy expressly granted by a federal law or if it requires the construction of a federal statute or a distinctive policy of a federal statute requires the application of federal legal principles for its disposition.

*Lindy v. Lynn,* 501 F.2d 1367, 1369 (3d Cir.1974). There is no remedy expressly granted by 42 U.S.C. § 1401 *et seq.* for plaintiff's complaint. The only relevant portion of the statute, section 1404a, waives sovereign immunity but does not, in and of itself, provide an independent source of federal jurisdiction. *Portsmouth,* 706 F.2d at 475; *Jemo,* 523 F.Supp. at 187; *Ippolito-Lutz,* 473 F.Supp. at 259. Neither does plaintiff's right to relief require the construction of a federal statute or the application of federal principles in order to vindicate a distinctive policy of the Act.

■ Plaintiff has made much of the fact that the construction contract was subject to federal regulations. But as noted by the Court in *Lindy,*

[T]he fact that a contract is subject to federal regulation does not, in itself, demonstrate that Congress meant that all aspects of its performance or nonperformance are to be governed by federal law rather than by the state law applica-

ble to similar contracts in businesses not under federal regulation.

501 F.2d at 1369; *Jemo,* 523 F.Supp. at 188. *See also M.B. Guran Co. Inc. v. City of Akron,* 546 F.2d 201, 205 (6th Cir.1976). Neither does the fact that the contracts were embodied on forms prescribed by HUD signify that a controversy over their terms arises under federal law. *Ippolito-Lutz,* 473 F.Supp. at 259.

In disputes such as this the focus of the Court should be on whether the federal elements are merely ingredients of a larger state law claim or whether they predominate in the contractual dispute. *Jemo,* 523 F.Supp. at 188. "If the concept of 'federal question' is to have any meaning, the Court must look beyond the verbiage of a complaint to the substance of the plaintiff's grievance, and dismiss the action, where no real basis for federal jurisdiction exists." *Ames-Ennis, Inc. v Midlothian Ltd.,* 469 F.Supp. 939, 943 (D.Md.1979) (quoting *Burgess v. Charlottesville Savings and Loan Association,* 477 F.2d 40, 43–44 (4th Cir. 1973)).

Although the present action against HUD is not one for breach of contract[2], the basic dispute between the parties is one arising out of the contract between plaintiff and Gladstone and the contract between Gladstone and HUD. Plaintiff claims in paragraph 29 of the complaint that "Nearly $180,000 of the Plaintiff's money which is due and payable pursuant to the contract is being retained and held even though due and owing to the plaintiff." Plaintiff's entitlement to the money is clearly a matter of state contract law. Plaintiff's claim in paragraph 50(g) that HUD has been unjustly enriched and that an equitable lien should be placed on the 10% retainage is clearly collateral to the primary contract dispute.

In *Ames-Ennis,* plaintiff, contractor for a housing program under section 1701,

---

2. Plaintiff has made it very clear at all stages of this litigation that it was not in privity of contract with the government and that it is not suing on a breach of that contract. Of course, because plaintiff seeks damages in excess of $10,000, if plaintiff were suing on a contract theory, exclusive jurisdiction over this case

would lie in the Court of Claims. 28 U.S.C. §§ 1346(a)(2), 1491. *See Portsmouth Redevelopment and Housing Authority v. Pierce,* 706 F.2d 471, 473 (4th Cir.1983); *Megapulse, Inc. v. Lewis,* 672 F.2d 959, 968 (D.C.Cir.1982); *Laguna Hermosa Corp. v. Martin,* 643 F.2d 1376, 1379 (9th Cir.1981).

sought recovery of a 10% retainage. The Court found no federal jurisdiction because the primary question was the housing authority's liability to the contractor according to the state common law of contracts. The liability of the United States was merely collateral to the primary contract issue. 469 F.Supp. at 943. Similarly, in order to determine whether plaintiff is entitled to the retainage fee, the primary question will be whether or not plaintiff performed according to its contract with Gladstone. Federal law is, at most, only tangentially implicated in this case.

Having failed to establish any direct statutory action as a basis for federal question jurisdiction, plaintiff resorts to the theory that federal common law is implicated by plaintiff's equitable claims and that this is sufficient to establish section 1331 jurisdiction.

In appropriate cases Section 1331 will support claims founded upon federal common law. *Illinois v. City of Milwaukee*, 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972); *Prescription Plan Service v. Franco*, 552 F.2d 493, 495 (2d Cir.1977). However, the instances where federal courts have created federal common law are "few and restricted." *Wheeldin v. Wheeler*, 373 U.S. 647, 651, 83 S.Ct. 1441, 1445, 10 L.Ed.2d 605 (1963).

The thrust of plaintiff's claim is that HUD is the beneficial owner of the project and that it is being unjustly enriched by holding $180,000 that was retained during the course of construction of the project. As relief plaintiff requests a determination that HUD has been unjustly enriched, an award of damages in *quantum meruit,* and an equitable lien upon the proceeds of the 10% retainage. Plaintiff relies on *Trans-Bay Engineers & Builders, Inc. v. Hills,* 551 F.2d 370 (D.C.Cir.1976) and *S.S. Silberblatt, Inc. v. East Harlem Pilot Block,* 608 F.2d 28 (2d Cir.1979) to support its allegation that these claims in equity are sufficient to confer jurisdiction in the federal district court.

In *Trans-Bay* plaintiff, a contractor, sued HUD to recover sums of money retained as a "holdback" during construction of a federal housing project. The Court determined that the district court had federal question jurisdiction under section 1331 by virtue of the fact that the alleged obligation of HUD was rooted not in any contract, but on "equitable rights generated by HUD's course of activities pursuant to federal statutes, including the contracts it has sponsored, and prescribed for others, as a condition of federal aid." 551 F.2d at 377. This, the Court determined, was a claim of right dependent on federal common law and as such presented a federal question within the scope of section 1331. *Id.* at 378.

*Trans-Bay* involved a very different program than the one in Gladstone, and can easily be distinguished on this basis. The *Trans-Bay* project arose under section 236 of the National Housing Act, 12 U.S.C. § 1702 *et seq.* Under section 236 HUD provides mortgage insurance to private sector financers of low income housing construction projects. HUD also relieves the owners of the projects of most of the financing costs. In case of default by the borrower, the mortgagee collects on the mortgage insurance by assigning the mortgage to the Secretary or by foreclosing and delivering title to the Secretary. *See S.S. Silberblatt,* 608 F.2d at 31–33.

In *Trans-Bay* the Secretary was assigned the mortgage after default by the borrower and acquired the property through foreclosure. The Secretary, however, acquired the property for 10% less than the actual value of the mortgage because the 10% retainage had not been paid. *See Armor Elevator Co. v. Phoenix Urban Corp.,* 655 F.2d 19 (1st Cir.1981).

This degree of federal involvement is unique to section 236 projects. Not surprisingly, the only cases which have followed *Trans-Bay's* holding that the equitable claims against HUD give rise to federal question jurisdiction are cases involving section 236 housing program virtually identical to the program involved in *Trans-Bay. See, e.g., Industrial Indemnity Inc. v. Landrieu,* 615 F.2d 644, 647 (5th Cir.1980) (per curiam); *United States v. American National Bank,* 443 F.Supp. 167, 171–72 (N.D.Ill.1977).

Other courts have avoided the question of whether equitable claims in housing cases give rise to section 1331 federal question jurisdiction. For example, in *S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28 (2d Cir.1979), relied on by plaintiff to support its theory of jurisdiction, the Court specifically noted that because it had subject matter jurisdiction under 28 U.S.C. § 1442, it was not necessary to address the question of whether plaintiff's equitable claims supported federal question jurisdiction. *Id.* at 35 n. 9.

Similarly, in *Bor-Son Building Corp. v. Heller*, 572 F.2d 174 (8th Cir.1978), plaintiff raised equitable claims against the Secretary. The District Court dismissed the case for lack of jurisdiction under § 1331. On Appeal the Circuit Court reversed, but it did not disturb the district court's determination that a federal question was lacking. Instead the Court found jurisdiction under § 1442, even though plaintiff had explicitly disclaimed any reliance on that statute.[3] *Id.* at 181.

It is noteworthy that even in *Trans-Bay*, where jurisdiction was said to exist on federal common law, the Court also had found an independent basis for jurisdiction, diversity of citizenship. 551 F.2d at 376–77. In other words, the holding regarding federal common law jurisdiction was not necessary to establish jurisdiction in the district court.

In the present case there is no diversity of citizenship, the case was not removed under § 1442, and therefore the only possible basis for jurisdiction is a federal question arising under the federal common law of equity.

▮ The Court rejects this theory of jurisdiction as applied to the facts of this case as did the Court in *Ippolito-Lutz*. In *Ippolito-Lutz*, which also involved a section 1401 project, the Court found no jurisdiction over plaintiff's action even though plaintiff had alleged *inter alia*, the unjust enrichment of HUD. Despite the equitable nature of plaintiff's claim, the Court found

that plaintiff's cause of action called only for the interpretation and application of the construction contract between plaintiff and the housing authority and the contract between the housing authority and HUD. The Court declined to extend the holding of *Trans-Bay* to the instant claim where the involvement of HUD was of an entirely different nature and was conducted under an unrelated Act of Congress. 473 F.Supp. at 259. We do the same.

As a result of the foregoing determination, it is unnecessary for this Court to address the government's third argument regarding implementation of the contract dispute remedy.

WHEREAS this Court has determined that it lacks subject matter jurisdiction over this case, it is hereby ORDERED that this case is DISMISSED.

IT IS SO ORDERED.

---

**3.** Incidentally, the Court noted that plaintiff's equitable claims were properly cognizable in state court. 572 F.2d at 181.