**1610 CORPORATION, in its capacity as General Partner of Cobbet Hill Associates Limited Partnership, Plaintiff,**

v.

**Jack KEMP, in his capacity as Secretary of the United States Department of Housing and Urban Development, and the Lynn Housing Authority, Defendants.**

Civ. A. No. 90–11827–C.

United States District Court, D. Massachusetts.

Jan. 2, 1991.

Tracy A. Miner, Michael S. Gardener, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, Boston, Mass., for 1610 Corp.

Judith S. Yogman, U.S. Atty's. Office, Boston, Mass., for Jack Kemp.

Webb F. Primason, Gordon, Moore, Primason & Bradley, Lynn, Mass., for Lynn Housing Authority.

## MEMORANDUM

CAFFREY, Senior District Judge.

This case is before the Court on the defendant's, Jack Kemp, Secretary of the United States Department of Housing and Urban Development ("Secretary" or "HUD"), motion to dismiss under Fed.R. Civ.P. 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state

a claim. This action arises out of a dispute between the plaintiff, 1610 Corporation, and the two defendants, Lynn Housing Authority ("LHA") and HUD. The plaintiff alleges that defendants breached a Housing Assistance Payment Contract ("HAP") with the plaintiff by wrongfully reducing plaintiff's section 8 housing assistance payments. The plaintiff brought this action alleging breach of contract, promissory estoppel, third party beneficiary, interference with contractual relations, breach of common law duty, and quantum meruit. Plaintiff's complaint also has two counts for declaratory relief and mandamus. For the reasons stated below, this Court holds that it lacks subject matter jurisdiction over the plaintiff's contract claims, and will thus transfer this case to the Claims Court.

## I.

The facts as set forth in the verified complaint are as follows. Plaintiff, 1610 Corporation, is the owner of the Cobbet School housing project in Lynn, Massachusetts. In October, 1987, the plaintiff submitted a proposal to the Lynn Housing Authority for the rehabilitation of the Cobbet School project under section 8 of the United States Housing Act of 1937.

LHA accepted the proposal and, with HUD's approval, executed an Agreement to Enter into a Housing Assistance Payments Contract ("AHAP") with the plaintiff. The AHAP delineated the anticipated contract rents for the project, and provided that upon completion of the rehabilitation, LHA would execute a HAP contract obligating LHA and HUD to pay those contract rents agreed upon in the AHAP. The AHAP also stated that the contract rents were subject to change by the LHA in accordance with HUD requirements, including the correction of errors in the computation of the contract rents.

In November of 1987, the plaintiff purchased the Cobbet School project for approximately eleven million dollars. When it had completed all of the renovations, plaintiff certified to LHA that the work had been completed and that its actual costs were the same as those listed in the AHAP. Subsequently, upon review and approval by HUD and by LHA, LHA and the plaintiff entered into a HAP contract which set the monthly contract rents for the project at $109,923. Like the AHAP contract, the HAP contract specified that the contract rents were subject to change in accordance with HUD requirements, including the correction of errors in computation.

From the time the HAP contract was executed on November 29, 1988, until April, 1990, HUD paid to LHA the rent subsidies necessary to permit plaintiff to receive the contract rents as set forth in the HAP contract. On April 13, 1990, however, HUD notified LHA that the rents as set forth in the HAP contract were incorrectly calculated, and that the HAP contract between plaintiff and LHA would have to be changed. This change was allegedly based on an audit prepared by the Office of Inspector General of HUD in September, 1988. Thus, since May 1, 1990, HUD has only paid to LHA, and LHA has paid to plaintiff, the sum of $102,407 each month. In addition, HUD notified the plaintiff that beginning in July, 1990, it would further reduce the monthly payments by $3,393.57 until an alleged overpayment of $122,168.52 was recaptured.

## II.

Upon a motion under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, the party asserting jurisdiction bears the burden of proving that the court has jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982); Wright & Miller, Federal Practice and Procedure: Civil 2d § 1350 (1990). There are two different ways of refuting the existence of subject matter jurisdiction. The first is the "facial attack," where it is asserted that the complaint fails to allege facts upon which subject matter jurisdiction can be based. *Adams*, 697 F.2d at 1219; 27 Fed.Proc., L.Ed. § 62:453 (1984). In the second type of attack, the "factual attack," the party challenging jurisdiction argues that the jurisdictional allegations of the complaint are not true. *Adams*, 697 F.2d at 1219.

In both types of attacks on jurisdiction, a court will construe the allegations of the complaint favorably to the plaintiff. 27 Fed.Proc., L.Ed. § 62:453 (1984); *see Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Smith v. Gross,* 604 F.2d 639, 641 (9th Cir.1979). In addition, in the case of a factual attack, a court may look to matters outside of the pleadings. *Exchange Nat'l Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126, 1130–31 (2d Cir.1976). In the present case, although the parties submitted several short affidavits, it was not necessary to go beyond the pleadings to examine any factual disputes. Such is the case because the defendant has challenged only the federal law character of plaintiff's lawsuit, not any of the critical jurisdictional facts. *See Arthur Young & Co. v. Richmond,* 895 F.2d 967, 971 (4th Cir.1990).

■ The Secretary suggests that the only basis for subject matter jurisdiction that may exist over the plaintiff's claims is the Tucker Act, which if applicable provides jurisdiction in the Claims Court. The Tucker Act provides both subject matter jurisdiction and a waiver of sovereign immunity for non-tort claims which seek monetary relief in excess of $10,000 "against the United States ... founded either upon ... any express or implied contract with the United States." 28 U.S.C. § 1346(a)(2); *see Army and Air Force Exch. Serv. v. Sheehan,* 456 U.S. 728, 738 n. 10, 102 S.Ct. 2118, 2124 n. 10, 72 L.Ed.2d 520 (1982); *Armor Elevator Co. v. Phoenix Urban Corp.,* 493 F.Supp. 876, 887 (D.Mass.1980), *aff'd,* 655 F.2d 19, 22 (1st Cir.1981). Thus, the Tucker Act establishes three requirements which, if satisfied, vest subject matter jurisdiction in the Claims Court. The action must be against the United States,

seek relief over $10,000, and be founded upon a government contract.[1]

In the present case, the plaintiff's breach of contract claim and its alleged rights as a third party beneficiary are determined by contract law. *See* Restatement of Contracts 2d §§ 142, 143. Therefore, because plaintiff seeks to recover over $10,000 in compensatory damages, the contract claims fall within the jurisdiction of the Tucker Act. *See Carlyle Gardens Co. v. Delaware State Hous. Auth.,* 659 F.Supp. 1300, 1307 (D.Del.1987) (suit against HUD and local housing authority over reduction of housing assistance payments within jurisdiction of Claims Court). Therefore, this Court concludes that jurisdiction over the plaintiff's contract claims falls within the jurisdiction of the Claims Court.

### III.

■ The Claims Court's jurisdiction over contract claims in excess of $10,000 is not exclusive provided there is an independent basis for jurisdiction in the district court outside the Tucker Act. *Bowen v. Massachusetts,* 487 U.S. 879, 910 n. 48, 108 S.Ct. 2722, 2740 n. 48, 101 L.Ed.2d 749 (1988); *C.H. Sanders Co. v. BHAP Hous. Dev. Fund Co.,* 903 F.2d 114, 119 (2d Cir.1990). Thus, it must next be determined whether an independent basis for subject matter jurisdiction exists outside the Tucker Act thereby providing this Court with jurisdiction over the plaintiff's claims. To support its claim for jurisdiction, the plaintiff suggests two sources, 28 U.S.C. § 1331, the federal question statute, and 28 U.S.C. § 1361, the mandamus statute.

■ First, the plaintiff contends that federal question jurisdiction exists under section 1331(a) as a claim arising under a federal statute or under the Constitution of the United States.[2] A claim arises under

---

**1.** The Supreme Court has held that the Tucker Act does not provide jurisdiction in the Claims Court over non-contract claims that are equitable in nature. *Merritt v. United States,* 267 U.S. 338, 341, 45 S.Ct. 278, 279, 69 L.Ed. 643 (1925); *see also Cleveland Chair Co. v. United States,* 214 Ct.Cl. 360, 557 F.2d 244, 246 (1977) (the Claims Court has no jurisdiction over claims for unjust enrichment). If the non-contract claims are ancillary to contract claims

asserted in the same suit, however, the Claims Court may have pendent jurisdiction over the non-contract claims. *See A.L. Rowan & Son, Gen. Contractors, Inc. v. Department of Hous. & Urban Dev.,* 611 F.2d 997, 1000–01 (5th Cir. 1980).

**2.** It is well-settled that neither the Administrative Procedure Act, nor the Declaratory Judgment Act provides an independent basis of juris-

the laws of the United States if the disposition of the issues requires the application of federal law. *Shulthis v. McDougal,* 225 U.S. 561, 569, 32 S.Ct. 704, 706, 56 L.Ed. 1205 (1912); *T.B. Harms Co. v. Eliscu,* 339 F.2d 823, 828 (2d Cir.1964), *cert. denied,* 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965). More specifically, federal question jurisdiction exists if the resolution of the issues requires the application of federal statutory or common law, the imposition of a remedy expressly granted by federal law, or the implementation of a distinctive policy of a federal statute requiring the application of federal legal principles for its disposition. *Illinois v. Milwaukee,* 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972); *Lindy v. Lynn,* 501 F.2d 1367, 1369 (3d Cir.1974); *Hines v. Cenla Community Action Comm., Inc.,* 474 F.2d 1052, 1055 (5th Cir.1973).

■ Generally, obligations arising under a contract are governed by state law. *Gully v. First Nat. Bank,* 299 U.S. 109, 114–15, 57 S.Ct. 96, 98, 81 L.Ed. 70 (1936); *Lindy,* 501 F.2d at 1369. Moreover, the fact that a contract is subject to federal regulation does not establish that its interpretation and aspects of its performance are governed by federal law. *Weeks Constr., Inc. v. Oglala Sioux Hous. Auth.,* 797 F.2d 668, 672 (8th Cir.1986); *Lindy,* 501 F.2d at 1369. Similarly, the mere fact that a contract involves a pre-printed form prescribed by HUD, does not signify that a controversy over its terms arises under federal law. *Tempo, Inc. v. Gladstone Hous. Comm'n,* 635 F.Supp. 879, 882 (W.D. Mich.1984); *Ippolito–Lutz, Inc. v. Harris,* 473 F.Supp. 255, 259 (S.D.N.Y.1979).

■ To support its argument that its claims arise under federal law, plaintiff relies on cases holding that district courts have federal question jurisdiction over contract actions arising under section 236 of the National Housing Act, 12 U.S.C. § 1701 *et seq. See Taylor Woodrow Blitman Constr. Co. v. Southfield Gardens Co.,* 534 F.Supp. 340, 343 (D.Mass.1982); *see also C.H. Sanders,* 903 F.2d at 119; *Trans–Bay Eng'rs and Builders, Inc. v. Hills,* 551 F.2d 370, 377 (D.C.Cir.1976). The cases cited by the plaintiff arising under section 236 all involve a very different program than the one in the present case which arises under the Housing Act of 1948, 42 U.S.C. § 1401 *et seq. See Conille,* 840 F.2d at 109; *Armor Elevator,* 655 F.2d at 20; *Taylor,* 534 F.Supp. at 343; *see also Sanders,* 903 F.2d at 118; *Trans–Bay,* 551 F.2d at 377.

Under section 236, HUD provides mortgage insurance to private financiers of low income housing projects. Section 236 relieves the owner of the project of most of the financing costs and provides insurance to financiers in case of default by the borrower. *See S.S. Silberblatt, Inc. v. East Harlem Pilot Block,* 608 F.2d 28, 31–2 (2d Cir.1979); *Tempo,* 635 F.Supp. at 883; *see also In re Epps v. Lomas Mortgage USA, Inc.,* 110 B.R. 691 (E.D.Pa.1990). When the Secretary acts as a mortgage insurer the degree of federal involvement is far greater than in cases arising under section 1401. For example, in *Trans–Bay* after default, HUD was assigned the mortgage and acquired title to the property through foreclosure. 551 F.2d at 375. Unlike the present action, HUD's involvement went beyond being a mere party to a contract. The *Trans–Bay* court found controlling the fact that the alleged obligations of HUD were not rooted in any contract but on

diction in the present situation. *See Califano v. Sanders,* 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977) (The APA does not provide a grant of subject matter jurisdiction allowing review of an agency action unless the action is final and there is no adequate remedy in a court); *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671, 70 S.Ct. 876, 878, 94 L.Ed. 1194 (1950) (Declaratory Judgment Act is not an independent source of federal jurisdiction); *Bradley v. Weinberger,* 483 F.2d 410, 413 (1st Cir.1973) (section 704 of the APA provides juris-

diction only where the administrative action is final and where there is no adequate remedy in a court). Also, section 1404(a) of the Housing Act of 1937 provides only an independent waiver of sovereign immunity and not a grant of general subject matter jurisdiction. *See Conille v. Secretary of Hous. and Urban Dev.,* 840 F.2d 105, 108–09 (1st Cir.1988); *Armor Elevator,* 655 F.2d at 22; *see also Industrial Indem., Inc. v. Landrieu,* 615 F.2d 644, 647 (5th Cir.1980); *Marcus Garvey Square, Inc. v. Winston Burnett Constr. Co.,* 595 F.2d 1126, 1131 (9th Cir.1979).

equitable rights generated by HUD's activities pursuant to federal statutes. *See id.* at 377. Thus, based on these equitable rights governing reassignment and foreclosure, the court held that the claim was governed by federal common law.

On the other hand, numerous courts have refused to apply the *Trans–Bay* rationale to cases involving contracts regulated by HUD under section 1401. *See, e.g., Lower Brule Constr. Co. v. Sheesley's Plumbing & Heating Co.*, 682 F.Supp. 1039, 1040 (D.S.D.1988); *Tempo*, 635 F.Supp. at 883–84; *Jemo Assoc. Inc. v. Greene Metro Housing Auth.*, 523 F.Supp. 186, 189 (S.D. Ohio 1981); *Ippolito–Lutz*, 473 F.Supp. at 259; *Ames–Ennis, Inc. v. Midlothian Ltd. Partnership*, 469 F.Supp. 939, 942 (D.Md. 1979); *see also Giannetti Bros. Constr. Corp. v. Lee County*, 585 F.Supp. 1214, 1217–18 (M.D.Fla.1984). These courts base their rejection of *Trans–Bay* on HUD's greater involvement in the section 236 housing program as compared to HUD's more limited contractual involvement in the programs under Section 1401. These cases, like the present case, for the most part only require the interpretation and application of the HAP and ACC contracts.

Thus, *Conille*'s use of federal common law is not controlling in the present case. In *Conille*, the First Circuit held that federal common law governed the action for breach of an implied contract under a lease between a tenant of a section 236 low income housing project and HUD. 840 F.2d at 109. There are several aspects of *Conille* that must be emphasized. First, the court specifically cautioned that federal common law is to be developed only in " 'few and restricted' instances ... when there exists a 'significant conflict between some federal policy or interest and the use of state law.' " *Id.* (quoting *Milwaukee v. Illinois*, 451 U.S. 304, 313, 101 S.Ct. 1784, 1790, 68 L.Ed.2d 114 (1981)). The First Circuit determined that a controversy concerning the rights and obligations of the United States acting as a mortgagee in possession under a lease entered into pursuant to section 236 was one of these rare circumstances where the development of federal common law was appropriate. The court, however, did not speak to whether this fashioning of federal common law would be appropriate under section 1401 *et seq.*

Second, plaintiff is incorrect in relying on *Conille*'s statement that "[i]t is well established that cases involving the rights and obligations of the United States or one of its agents under a contract entered into pursuant to authority conferred by federal statute, are governed by federal common law." *Id.* It is important to note that *Conille* preceded the United States Supreme Court's clarification in *Bowen* that the Claims Court's jurisdiction is not exclusive if there exists a separate basis for subject matter jurisdiction in the district court, such as section 1331. *See Bowen*, 487 U.S. at 910 n. 48, 108 S.Ct. at 2740 n. 48. In light of this statement by the Supreme Court, plaintiff's interpretation of the portion of the *Conille* opinion quoted above would essentially mean that the district court has section 1331 federal question jurisdiction over every governmental contract because all government contracts are governed by federal common law. Such an interpretation would undercut completely the function of the Claims Court.[3]

In sum, the claims alleged by the plaintiff do not involve a right or remedy created by federal law. Rather, this case involves private contracts rights. The claims boil down to a breach of contract action arising from HUD's reduction in contract rents from the amount originally specified in the HAP contract. HUD did not base this adjustment on a federal statute or regulation, but rather, on a contract provision, which according to HUD, allows for

---

**3.** It is also worth noting that the First Circuit in *Conille* when making the statement quoted above was not addressing the issue of subject matter jurisdiction. The district court had subject matter jurisdiction because the plaintiff waived any damages in excess of $10,000, thereby giving the court jurisdiction under 28 U.S.C. § 1491. *Conille v. Pierce*, 649 F.Supp. 1133, 1140 (1986). Thus, *Conille* cannot be relied upon as a statement of when a court has federal question jurisdiction under section 1331.

such adjustments. Although federal statutes and regulations may be implicated to some extent, the plaintiff's claims at core require only an interpretation of the HAP contract between the plaintiff and the LHA and the ACC contract between the LHA and HUD. Even the plaintiff admits that the Office of the Inspector General of HUD "did not find that the original Contract Rents were calculated in a manner which violated any federal statute or regulation." (Plaintiff's Memorandum, at 3).

Furthermore, there is no significant federal interest or policy in conflict with state law, nor is there a necessity to provide for federal uniformity in the interpretation of the parties' contract rights that would justify the creation of federal common law in this instance. This Court finds that plaintiff's contract claims and the interpretation of the contractual obligations of the parties are governed by state law. Therefore, this Court has no subject matter jurisdiction to hear plaintiff's contract claims under section 1331.

■ Alternatively, plaintiff seeks to base jurisdiction upon the mandamus statute, 28 U.S.C. § 1361. Likewise, however, the plaintiff cannot rely on the mandamus statute as an independent basis of subject matter jurisdiction. The mandamus statute states that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The plaintiff argues that the mandamus statute provides this Court with subject matter jurisdiction by virtue of Count VIII[4] of its verified complaint. In Count VIII, the mandamus count, the plaintiff asks that the Court award it damages in the amount specified in the HAP contract and that the Court enter a declaratory judgment that plaintiff is entitled to receive the contract rents.

Under section 1361, a federal court may direct a United States official to perform a purely ministerial act. *Massachusetts v. Connor*, 248 F.Supp. 656, 659 (D.Mass.), *aff'd*, 366 F.2d 778 (1st Cir.1966). In order to do so, however, three criteria must be met, namely: the plaintiff must show that there is no other adequate remedy, that he has a clear right to the relief sought, and that there is a clear duty on the part of the defendant to take the action which is sought to be compelled. *Georges v. Quinn*, 853 F.2d 994, 995 (1st Cir.1988) (per curiam).

Plaintiff in the case at hand has failed to establish the first of these three criteria as it has an adequate remedy, namely, a contract action in the Claims Court. As explained by the First Circuit, " '[m]andamus does not supersede other remedies, but rather comes into play where there is a want of such remedies.' " *American Science and Eng'g, Inc. v. Califano*, 571 F.2d 58, 64 (1st Cir.1978) (quoting *Carter v. Seamans*, 411 F.2d 767, 773 (5th Cir.1969)). As a consequence, it has been repeatedly held that a plaintiff cannot rely on the district court's mandamus jurisdiction where it has an adequate remedy in the form of a contract action against the defendant. *See, e.g., American Science*, 571 F.2d at 64; *Carter*, 411 F.2d at 773; *Aldrich v. Schweiker*, 555 F.Supp. 1080, 1087 (D.Vt.1982); *S.J. Groves & Sons Co. v. United States*, 495 F.Supp. 201, 209 (D.Colo.1980); *Ippolito–Lutz*, 473 F.Supp. at 260; *Boston v. United States, Dept. of Interior*, 424 F.Supp. 259, 265 (E.D.Mo. 1976).

Moreover, a plaintiff cannot circumvent this rule by disguising what is basically a contract claim as a claim for a writ of mandamus. *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 4 (1st Cir.1989); *American Science*, 571 F.2d at 64; *Connor*, 248 F.Supp. at 660. As has been discussed previously, plaintiff's claim in this action is one for breach of the HAP and ACC contracts. The relief plaintiff seeks in Count VIII, the mandamus count, is basically that the contracts be enforced. Plaintiff as

---

**4.** The mandamus count of the plaintiff's complaint is numbered "V," but it should actually be "VIII."

much as concedes that this is a contract action in its memorandum when it states that "Cobbet seeks nothing more than performance by HUD of its contractual obligations." (Plaintiff's Memorandum, p. 11). Thus, plaintiff cannot create subject matter jurisdiction in this Court by couching what is essentially a contract action in the form of an action for mandamus.

### IV.

■■■■■ It is now necessary to examine the plaintiff's non-contract claims. Count VI of plaintiff's verified complaint alleges interference with contractual relations. Congress, however, has explicitly exempted claims for interference with contract rights from its limited consent to be sued embodied in the Federal Tort Claims Act ("FTCA"). 28 U.S.C. § 2680(h).[5] Moreover, plaintiff cannot look to an alternative basis for waiver of sovereign immunity as to this tort claim, as the FTCA is the exclusive remedy for torts. *Armor Elevator*, 655 F.2d at 22.[6] Thus, Count VI should not be transferred, but should be dismissed outright.

■■■ Plaintiff also alleges claims for declaratory and equitable relief.[7] The equitable claims, if asserted alone, might properly meet the requirements for federal question jurisdiction in the district court under § 1331.[8] *See Conille v. Secretary of Hous. and Urban Dev.*, 840 F.2d at 109; *Krupp v. Federal Hous. Admin.*, 285 F.2d 833, 834 (1st Cir.1961). These claims, however, are mere rewordings of the contract claim and are therefore ancillary to plaintiff's central objective of receiving a mone-

tary award for breach of contract. *See A.L. Rowan & Son, Gen. Contractors, Inc. v. Department of Hous. & Urban Dev.*, 611 F.2d 997, 1000–01 (5th Cir.1980); *see also Portsmouth Redev. & Hous. Auth. v. Pierce*, 706 F.2d 471, 474 (4th Cir.1983). Thus, given that this Court has no subject matter jurisdiction over the contract claims, the only court that can exercise jurisdiction over the entire case is the Claims Court.

For all of the reasons stated above, this Court concludes that the proper forum for this action is the Claims Court. Furthermore, the interests of justice would be served by such a transfer of all the claims arising out of the same transaction as the contract claims. To transfer both the contract and the noncontract claims to the Claims Court would avoid the bifurcation of the suit. *See American Science*, 571 F.2d at 64; *A.L. Rowan*, 611 F.2d at 1001. Thus, pursuant to 28 U.S.C. § 1406(c), the action should be immediately transferred to the Claims Court.

■■■ The only issue remaining is whether plaintiff's claims against LHA should be transferred along with the claims against HUD. The plaintiff's claims against LHA would appear to fall within the Claims Court's ancillary jurisdiction. *See Carlyle Gardens*, 659 F.Supp. at 1308. First, the plaintiff's claims against LHA are logically and factually dependent upon, and intertwined with, its claims against HUD. In fact, the claims against both defendants are identical. Second, the goal of judicial economy would certainly not be served by trying the defendants separately. Thus,

---

5. Section 2680 states that "[t]he provisions of this chapter and section 1346(b) of this title shall not apply to ... (h) any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."

6. Alternatively, this claim would still have to be dismissed, as plaintiff has failed to exhaust its administrative remedies by presenting its claim to the Secretary, a condition precedent to bringing suit. *See Armor Elevator*, 655 F.2d at 22.

7. Plaintiff alleges the following equitable claims in its verified complaint: promissory estoppel;

quantum meruit; and, equitable estoppel, which the plaintiff refers to in its complaint as "breach of federal common law duty."

8. This Court need not address the question whether the United States has waived its sovereign immunity with respect to the plaintiff's claims for equitable relief. Even assuming sovereign immunity was waived, this Court would be forced to sever the contract claims over which the district court lacks subject matter jurisdiction. However, to avoid piecemeal consideration of the issues that arise out of the same transaction, this Court finds it in the interests of justice and judicial economy not to bifurcate the suit as discussed *infra*.

this Court concludes that is also in the interests of justice to transfer the claims against LHA to the Claims Court.

As a result of the foregoing determination, it is unnecessary for this Court to address the Secretary's other arguments.

Order accordingly.